UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNA FUGARINO** | **CIVIL ACTION NO. 2:21-cv-00594** |
| **VERSUS** | **JUDGE: MORGAN** |
| **MILLING, BENSON, WOODWARD LLP** | **MAGISTRATE-JUDGE: VAN MEERVELD** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**OPPOSITION TO MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

**FACTS:**

On March 15, 2021, Ms. Fugarino filed her Petition in the Civil District Court for the Parish of Orleans. Thereafter, defendant Milling, Benson, Woodward LLP removed this matter on March 24, 2021.

Ms. Fugarino is an attorney. In 2018, she applied and was interviewed for an attorney position with defendant Milling. Ms. Fugarino contends that during her interview with defendant Milling, Norman Pizza, Partner, asked whether she planned on having children and then told her if she were hired, it would be beneficial for her not to have children in the "near future." Ms. Fugarino began her employment as an Associate Attorney on January 16, 2019.[1]

In March, 2019, Ms. Fugarino discovered she was pregnant and advised defendant Milling she was pregnant. In anticipation of and planning for her pregnancy, Ms. Fugarino requested accommodations.[2]

Ms. Fugarino alleges she was subjected to unwelcomed and unabated sex/pregnancy-based discrimination and harassment by Milling. At paragraph 6 of the Petition, Ms. Fugarino detailed

---

[1] Petition, ¶4
[22] Petition, ¶5

1

incidents of sex/pregnancy-based harassment which included, specifically, sex/pregnancy-based derogatory comments directed at her by Pizza:

-comments about Ms. Fugarino's breasts, including their size, how large they were, how they would get larger during her pregnancy, and that she should breastfeed;

-discussing Ms. Fugarino's body in a sexually charged manner, including in 2019 that he knew Ms. Fugarino had Italian heritage because of the way her 'body is shaped and curved' and in September, 2019 [the month prior to delivering her child], sexual comments about her clothing, including Petitioner's looks and whether she had purchased maternity clothes to 'suit' her growing body.  Ms. Fugarino alleges these sexually-charged/pregnancy-charged comments were witnesses and/or made in the presence of Shannon Howard-Eldridge, Partner, and Michaela Boudreaux.  On one occasion when Pizza made sexually-charged/pregnancy-charged comments to Ms. Fugarino, Howard-Eldridge acknowledged Pizza's harassing comments to Ms. Fugarino and stated that she knew he could not 'say that';

-numerous comments about Ms. Fugarino's pregnancy, including about her body's 'changes', losing weight with breast feeding, posting of posters in Ms. Fugarino's office regarding her pregnancy, and comments about what could/would happen to her vagina;

-Pizza openly discussing Petitioner's pregnancy in and around the office; and,

-such other incidents as will be more fully shown at trial.[3]

In addition to her claims of unlawful sex-based/pregnancy-based harassment under both Title VII and La. R.S. 23:301, *et seq.*, Ms. Fugarino alleges sex/pregnancy discrimination under LEDL/Title VII and retaliation under Title VII , including for requesting accommodation(s).

---

[3] Petition, ¶6.

Defendant's Motion to Dismiss addresses only three (3) items; namely, her claim of sex/pregnancy discrimination under LEDL/Title VII, retaliation under Title VII, and request for accommodation. Defendant Milling does not contest Ms. Fugarino's claims of sex-based/pregnancy-based harassment under Title VII or LEDL. For the reasons more fully set forth herein, defendant's Motion should be denied.

**LAW AND ARGUMENT:**

1. Motion to Dismiss Standard

This Petition was originally filed in State Court. Pursuant to La. C.C.P. Art. 891, a pleading need only set forth a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation. Louisiana's pleading standards differ from those found at Fed.R.Civ.P. Rule 8, requiring that a complaint contain a short and plain statement of the claim showing the pleader is entitled to relief. Both pleading standards target fair notice of the claims pursued.

A Fed.R.Civ.P. Rule 12(b)(6) Motion challenges whether a claim for relief is alleged. These motions are viewed with disfavor and rarely granted.[4] The Court must take the allegations as true and evaluate the facts in a light most favorable to the non-moving party. All doubts as to the sufficiency of the claim must be resolved in favor of the non-moving party. However, in the event a Court is inclined to grant a Fed.R.Civ.P. Rule 12(b)(6) Motion, the plaintiff is afforded the opportunity to amend.

---

[4] *Iberiabank Corp. v. Ill. Union Ins. Co.,* 953 F.3d 339, 345 (5th Cir. 3/18/20).

Pursuant to Fed.R.Civ.P. Rule 8(a)(2), Ms. Fugarino need only set forth a short and plain statement of "plausible" relief.[5] Nothing more is required. In other words, there need only be enough factual content so the Court may draw a reasonable inference the defendant is liable for the alleged misconduct.[6] Here, Ms. Fugarino sets forth her claims with facial plausibility, complying with Rule 8 and defeating the Rule 12(b)(6) Motion.

### 2. Sex/Pregnancy-Based Harassment

Although defendant Milling does not directly challenge Ms. Fugarino's claims of sex/pregnancy-based harassment under Louisiana and Federal law, to the extent said defendant uses terms such as "stray remarks", analysis is in order. Just like a "traditional" claim of sexual harassment, infusion of a pregnancy does not diminish the sex-based nature of the harassment itself. Indeed, as is made clear in 1978 by Amendment to Title VII and, specifically to 42 U.S.C. §2000e(k), "discrimination" (which also includes harassment) "because of sex" or "on the basis of sex" includes "because of or on the basis of pregnancy."

Ms. Fugarino submits that she was repeatedly harassed by Partner Pizza because of her pregnancy and sex. As set forth in paragraph 6 of her Petition, Ms. Fugarino describes numerous, repeated, and on-going offensive comments by Pizza directed at her because of her pregnancy and sex. Those comments included direct statements about her breasts, her body, her "shape", her "curves", her vagina during pregnancy, and breastfeeding. For his part, as alleged by Ms. Fugarino, Pizza undertook no efforts to conceal his harassment, often making such offensive and derogatory remarks in the presence of others, including law firm partners.

---

[5] *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 555 (2007); *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002); *Smith v. Univ. Health Shreveport, LLC*, 2019 U.S. Dist. LEXIS 40437 *1, *6-7 (W.D. La. 2/25/19).
[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ms. Fugarino alleges that Pizza's sexual/pregnancy harassment was so open and obvious that it provoked commentary by Partners Howard-Eldridge and Wilson. Ms. Fugarino alleges they admitted Pizza had a known history of sexual harassment, that he had "gotten away with it [sexual harassment] for years, and that she (Howard-Eldridge) knew Pizza could not "say that."[7] Despite the clearly harassing behavior, Pizza did not stop and, according to Ms. Fugarino, his unlawful harassment continued throughout her pregnancy and until she was fired.

Analysis of a claim of sex/pregnancy harassment proceeds under the traditional principles enunciated in *Harris v. Forklft Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The *Harris* Court instructs that an environment is hostile or abusive on consideration of "all the circumstances", which may include whether it is physically threatening or humiliating, a mere offensive utterance, and unreasonably interferes with an employee's work performance. Effect on one's psychological well-being is relevant, but as with any other factor, not required.[8] Here, Ms. Fugarino alleges the sex/pregnancy-offensive comments about her body, the shape of her body, her breasts, and her vagina were frequent and did not cease despite her protestations to the contrary. The duration of harassment spanned her entire pregnancy culminating in the termination of her employment upon her return to work following the birth of her child.[9]

In accord with the rubric established in *Faragher/Ellerth*[10], when, as in this case, the harassment is perpetrated by a supervisor, no affirmative defense is afforded where the harassment culminates in the taking of tangible employment action. Should the tangible employment action

---

[7] Petition, ¶¶7, 6b
[8] *Harris*, at 21-22, 23
[9] Petition, ¶18; compare to *Martin, infra*, where the *Martin* Court, at p. 823 notes there was only one pregnancy discriminatory comment which was insufficient to support a pregnancy harassment claim. On the contrary, as in accord with *Harris* and its progeny, Ms. Fugarino alleges a plethora of offensive, derogatory comments throughout her pregnancy and through her discharge.
[10] *Faragher v. City of Boca* Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries,* 524 U.S. 742, 118 S.Ct. 2257 (1998)

5

not occur, a defending employer may assert the now-familiar two (2)-part affirmative defense to either liability or damages: 1) the defending employer acted reasonably to prevent and correct promptly the situation in the employee's work environment; and, 2) the employee unreasonably failed to take advantage of corrective opportunities actually offered to him/her.  Regardless of the inapplicability of the defense to the case at bar, this matter is presented on Motion to Dismiss.  In that regard, Ms. Fugarino need only show facial plausibility of her sex/pregnancy-harassment claims under Title VII and La. R.S. 23:301, *et seq*.  As is clear from the face of her pleadings, she has done so.

3. Sex/Pregnancy Discrimination

The Pregnancy Discrimination Act (PDA) of 19878 added new language to Title VII clarifying that "because of sex" or "on the basis of sex" includes on the basis of pregnancy, childbirth, or related medical conditions.  La. R.S. 23:342(1), Title VII's equivalent, prohibits an employer, "because of pregnancy, childbirth, or related medical condition of any female employee" to discharge her from employment or to discriminate against her in the compensation, or in terms, conditions, or privileges of employment.  The wide berth afforded at La. R.S. 23:342(1) includes the anti-harassment protections argued *supra*, as well as proscription against termination because of pregnancy or childbirth, and denial of reasonable leave not to exceed four (4) months.

Neither Title VII nor La. R.S. 23:301, *et seq.*, limits sex/pregnancy discrimination claims only to failure to accommodate.  Instead, as is plain from the words of each Statute and their statutory constructs, the law prohibits termination of an employee because she was pregnant and/or gave birth.  Ms. Fugarino alleges she was terminated because of her pregnancy and ensuing childbirth.  At paragraph 14 of her Petition, she alleges she was terminated by defendant, through Pizza who had made the numerous preceding pregnancy/sex-based offensive comments, because,

according to Pizza, the law firm "was not conducive to a mother-baby relationship." Ms. Fugarino also alleges that defendant confirmed her termination was not performance-based and that the defendant echoed that Ms. Fugarino "did not take her job seriously and work long enough hours because of [her] having a baby." As is set forth on the face of her Petition, Ms. Fugarino returned to work February 3, 2021 – two (2) weeks before her termination.[11] Prior to termination, in the two (2) weeks since Ms. Fugarino returned to work, she was not counseled, written up, disciplined, and defendant had not cited her for any allegedly poor work performance. Ms. Fugarino asserts her termination was on account of her childbirth and, indeed, sets for direct evidence for that contention.

In *Martin v. Winn Dixie La., Inc.,* 132 F.Supp. 3d 794, 818 (M.D. La. 9/23/15), the Court analyzing comment evidence for the purposes of a PDA claim, found "some direct evidence of discrimination" existed. This occurred where the supervisor, with "ill-defined authority" over the employment decision, commented that Ms. Martin "self-administer" pregnancy accommodations. Citing to *E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F.Supp. 897 (D. Md. 2011), the *Martin* Court reiterated direct evidence existed where the plaintiff's supervisor told her she would be removed from her job because she was pregnant. This evidence is less revealing that the allegations of Ms. Fugarino that the reason for her discharge was because she gave birth to her child. Preceding her termination were the numerous, identified, offensive comments and, as set forth in the present Petition, ¶11, the threat that she needed to be prepared to work a full schedule of "165 billable hours per month" and return, which she did, on February 3, 2020. At Petition ¶12, Ms. Fugarino also identified direct evidence commentary by Partner, Mr. Loewen, that she would not be

---

[11] Petition, ¶¶11, 13, 14, 15.

permitted a modified work schedule and, instead, "she should find another job not as demanding as practicing law" because she gave birth to her child.[12]

Hence, Ms. Fugarino sets forth (plausibly) her claim that she was terminated because of her pregnancy and childbirth.  Noting defendant's emphasis on claims for failure to accommodate pregnancy, Ms. Fugarino alleges she was accommodated up to four (4) months as provided pursuant to La. R.S. 23:342.  However, Ms. Fugarino's claims of discrimination rest upon her unlawful termination.  Ms. Fugarino's allegations setting forth her accommodation requests leading up to the birth of her child demonstrate direct evidence of anti-pregnancy/childbirth and retaliatory animus, particularly on the part of Pizza who fired her.[13]

### 4.  Retaliation

Ms. Fugarino contends she was retaliated against, including harassed and terminated, on account of her protected activities.  Title VII retaliation occurs where the employee reasonably believes she has been discriminated against or harassed on account of sex/pregnancy.  42 U.S.C. §2000e-3 makes it an unlawful employment practice "for an employer to discriminate against any of his employees. . . because he opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. Section 2000e-3 prohibits retaliation under Title VII in two (2) significant ways. The first portion of Section 2000e-3 bespeaks protection for "participation", while the second portion, "opposition."  Ms. Fugarino invokes anti-retaliation protection for her

---

[12] *Purvis v. Taber Extrusions, L.P.*, 2008 U.S. Dist. LEXIS 45459, at *15-16 (S. D. Ms. 6/10/2008): holding statement by management discussing "rumors" the plaintiff was pregnant on consideration of termination constituted direct evidence of pregnancy discrimination.
[13] Petition, ¶¶8, 9, 10, 11, 12

"opposition." In *Cuellar v. Southwest Gen. Emergency Physicians, PLLC*, 656 Fed. Appx. 707 (5th Cir. 8/4/16), the Fifth Circuit emphasized the maxim that "opposition" for the purposes of Title VII anti-retaliation occurs where an employee reasonably believes the actions constituted a violation of Title VII's prohibitions against discrimination.[14] Consequently, as the *Cuellar* Court noted, it matters not whether the challenged conduct represented an actual violation of Title VII, only that her belief was "reasonable."[15]

Ms. Fugarino alleges Pizza's harassing comments occurred in front of Howard-Eldridge and Boudreaux[16], who, acknowledging the untoward nature of the behavior, responded that she knew he could not "say that." At paragraph 7, Ms. Fugarino asserts that she reported, opposed, and/or complained about the sex/pregnancy-based comments, to no avail and, when reporting to Partner Wilson, he confirmed that Pizza had "gotten away with it [sexual harassment] for years." When Ms. Fugarino requested a modified work schedule because of childbirth and opposed the on-going unlawful harassment, defendant retaliated against her, including retaliatory harassment, stripping of job duties and workload, threats, and termination.[17]

Title VII retaliation claims may be proven by direct or circumstantial evidence, although the matter of proof is not one considered on Motion to Dismiss. Here, there is both direct and circumstantial evidence alleged. For cases involving direct evidence, the burden shifting framework of *McDonell Douglas* does not apply.[18] According to *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409 (5th Cir. 2003), once the plaintiff submits evidence that retaliation was **"among"** the motives which prompted the employment action, the burden shifts to the employer

---

[14] *Cuellar v. Southwest Gen. Emergency Physicians, PLLC*, 656 Fed. Appx. 707, 709 (5th Cir. 8/4/16).
[15] *Id; See also Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981).
[16] Petition, ¶6b
[17] Petition, ¶¶14, 15, 16, 17, 18
[18] *United States Supreme Court in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1984),

to establish by a preponderance of the evidence that the same decision would have been made regardless of the "forbidden factor". (Emphasis added) Direct evidence is defined as evidence which "if believed, proves the fact of [intentional retaliation] without inference or presumption".[19] Per *Fabela*, in the context of Title VII, "direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis for the adverse employment action."[20]

Ms. Fugarino asserts defendant retaliated against her because of her pregnancy and childbirth and her opposition to sex/pregnancy-based harassment/discrimination. In her Petition, she identifies several occasions on which she engaged in protected activities and, almost immediately upon her return to work on February 3, 2020, was fired. In his email to the firm regarding Ms. Fugarino's termination, Pizza announced her termination as being because defendant law firm needed an attorney on a 'full-time' basis. This, of course, falls on the heels of Pizza's statements that working for the firm "was not conducive to a mother-baby relationship", that she did not take her job seriously because she had a baby. Ms. Fugarino also alleged that defendant's reason for termination was false or, at a minimum, pretextual.[21,22]

In *Crawford v. Metro Govt't of Nashville & Davidson County*, 555 U.S. 271, 129 S.Ct. 846, 271,172 L.Ed. 2d 650 (2009), the United States Supreme Court held an employee's conduct in merely answering questions during employer's investigation of sexual-harassment claim against

---

[19] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409 (5th Cir. 2003); *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822 (E.D. Tx. 7/13/09) (citing cases).
[20] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003)
[21] *Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 402 (5th Cir. 2000); *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 416-417 (5th Cir. 2003).
[22] *See also Hague v. Univ. of Tex. Health Sci. Ctr.,* 560 Fed. Appx. 328, 333 f.n. 12 (5th Cir. 2014); *Jones v. Robinson Prop. Group, L.P.,* 427 F.3d 987, 995 (5th Cir. 10/11/05) (holding the existence of direct evidence of retaliation where the supervisor admitting during his deposition that he refused to hire the plaintiff because of his complaint in 1995.); *Martin*, 674 F. Supp. 2d at 845-846 (affirming direct evidence of retaliation where the supervisor sent an email stating that the employee "pissed [him] off by accusing [him] of discrimination" and testimony from the plaintiff that the supervisor told him that he was being terminated because he could not "forgive" the accusations of discrimination.).

a coworker is protected by 42 U.S.C. §2000e-3(a). In *Badgerow v. Rej Props.*, 974 F.3d 610 (5th Cir. 9/11/20), the Court found the plaintiff engaged in protected activity when she claimed that she told her co-worker that she did not know whether she was being treated unfairly because she was not "family or because she is a woman."[23] The granting of summary judgment was ultimately reversed as the Court held the plaintiff showed sufficient evidence of pretext through conflicting reason(s) for termination and retaliatory comments. In *Valderaz v. Lubbock County Hosp. Dist.*, 611 Fed. Appx. 816 (5th Cir. 6/24/15), the Court rejected the defendant's argument that the plaintiff did not engage in protected activity unless she reported a claim for sex harassment.[24] *Valderaz* affirmed the plaintiff's internal report of what she "perceived" to be discrimination was sufficient.[25] Here, there are clear allegations of Ms. Fugarino's engagement in protected activities triggering Title VII anti-retaliation protection.

In addition to identification of the protected activities, Ms. Fugarino asserts a causal connection. It is noted that the Fifth Circuit recently reiterated the existence of causation even in the absence of direct expressions of retaliatory animus in *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236 (5th Cir. 2019). The *Garcia* Court confirmed that mere close timing between an employee's protected activity and the tangible action satisfies causal connection.[26] The Fifth Circuit has held that a period of four (4) months is sufficient to establish a causal connection.[27]

---

[23] *Badgerow*, 974 F.3d at 619-20 (5th Cir. 2020); *See also Long v. Eastfield College*, 88 F.3d 300, 305 (5th Cir. 1996) (finding genuine issues of material fact that the plaintiff engaged in protected activity where she complained about an explicit joke to her colleague, hostile work environment, and that she was treated differently.); *Williams v. RaceTrac Petroleum, Inc.*, 824 F.Supp. 2d 723 (M.D. La. 5/20/10) (finding on summary judgment genuine issues of material fact that the plaintiff engaged in protected activity for purposes of her retaliation claim when she told her supervisor that she was "uncomfortable" and "did not like" the flirtatious comments made by another co-worker.).
[24] *Valderaz v. Lubbock County Hosp. Dist.,* 611 Fed. Appx. 816, 820-821 (5th Cir. 2015).
[25] *Id.* at 820-821, 823-824. The plaintiff's retaliation claim was ultimately dismissed on summary judgment on the issue of pretext. However, as discussed *infra*, plaintiff presents sufficient evidence of pretext.
[26] *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 241-243 (5th Cir. 2019).
[27] *Evans v. Cty. of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Here, Ms. Fugarino not only identifies instances of retaliatory animus, but also shows the retaliation and retaliatory harassment occurred on the cusp of her protected activities.

Again, however, this case is not presenting on summary judgment. The defendant moved to dismiss and the standard is merely one of facial plausibility.

**CONCLUSION:**

Ms. Fugarino shows she meets the pleading standards by setting forth facially plausible claims. A Motion to Dismiss requires nothing more and defendant's Motion should be denied.

Should the Court be inclined to require more, the law affords Ms. Fugarino an opportunity to amend and not dismissal.

RESPECTFULLY SUBMITTED:

By: _/s Jill L. Craft. _____
Jill L. Craft, T.A., La. Bar Roll No. 20922
W. Brett Conrad, Jr., La. Bar Roll No. 37639
Kaitlin A. Wall, La. Bar Roll No. 39462
Jill L. Craft, Attorney at Law, LLC
329 St. Ferdinand Street
Baton Rouge, LA 70802
(225) 663-2612

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that on this 4th day of May, 2021 copy of the above and foregoing was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

     Baton Rouge, Louisiana, this 4th day of May, 2021.

                                      _____/s Jill L. Craft_____
                                               Jill L. Craft