# JILL L. CRAFT
### ATTORNEY AT LAW, LLC

JILL CRAFT
W. BRETT CONRAD, JR.



May 8, 2020

*Via Certified Mail/Return Receipt Requested*
*No.: 7017 3380 0000 6404 4906*

U.S. Equal Employment Opportunity Commission
New Orleans Field Office



**RE:     Charge of Discrimination of Jenna K. Fugarino**

Dear Sirs/Madams:

This firm represents Ms. Jenna K. Fugarino with her enclosed Charge of Discrimination for sex/gender harassment/discrimination, pregnancy harassment/discrimination, and retaliation/ reprisal her employer. Milling Benson Woodward, LLP.  Also, enclosed are the completed questionnaires.  Please file and docket the enclosed charge on behalf of Ms. Fugarino alleging sex/gender harassment/discrimination, pregnancy harassment/discrimination, and retaliation/ reprisal

Ms. Fugarino's Current Address:

Respondent:                          Milling Benson Woodward, LLP

It is our understanding that Milling Benson Woodward, LLP has between 15 - 100 employees.

Should you have any questions, please do not hesitate to contact this office.

Very truly yours,

Jill L. Craft

JLC/awj
Enclosures
cc:     Client

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE**

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: Fragasso   First Name: Jenna   MI: K

Street or Mailing Address: ▓▓▓▓▓▓▓   Apt or Unit #:

City: ▓▓▓▓   County: ▓▓▓▓   State: ▓▓   Zip: ▓▓▓▓

Phone Numbers: Home: ( ▓▓▓ )   Work: ( ▓▓▓ )

Cell: ▓▓▓▓   Email Address: ▓▓▓▓▓▓▓▓

Date of Birth: ▓▓▓▓   Sex: ☐ Male ☑ Female   Do You Have a Disability? ☐ Yes ☑ No

Please answer each of the next three questions.   i. Are you Hispanic or Latino? ☐ Yes ☑ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native ☐ Asian ☑ White
☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? American ~ USA

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: Jill Craft / Brett Conrad   Relationship: Attorney

Address: ▓▓▓▓   City: ▓▓▓▓   State: ▓▓   Zip Code: ▓▓▓▓

Home Phone: ( ▓▓▓ )   Other Phone: ( ▓▓▓ )

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☑ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Milling Benson Woodward, LLP

Address: ▓▓▓▓   County: ▓▓▓▓

City: ▓▓▓▓   State: ▓▓   Zip: ▓▓▓▓   Phone: ( ▓▓▓ )

Type of Business: Law Firm   Job Location if different from Org. Address: Mandeville, LA / Northshore Office

Human Resources Director or Owner Name: ▓▓▓▓   Phone: ▓▓▓▓

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐ Fewer Than 15   ☑ 15 – 100   ☐ 101 – 200   ☐ 201 – 500   ☐ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☑ No

Date Hired: January 16, 2019   Job Title at Hire: Associate Attorney

Pay Rate When Hired: 75,000 / yr   Last or Current Pay Rate: 75,000 / yr

Job Title at Time of Alleged Discrimination: Associate Attorney   Date Quit/Discharged: Feb. 17, 2020

Name and Title of Immediate Supervisor: ▓▓▓▓ Managing Partner

If Job Applicant, Date You Applied for Job _____   Job Title Applied For _____

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race ☑ Sex ☐ Age ☐ Disability ☐ National Origin ☐ Religion ☑ Retaliation ☑ Pregnancy ☐ Color (typically a difference in skin shade within the same race) ☐ Genetic Information: circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

_____

Other reason (basis) for discrimination (Explain): _____

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: 02/17/2020 Action: Terminated by N███████ P███ Managing Partner, Northshore Office

Name and Title of Person(s) Responsible: see above.

B. Date: 02/17/2020 Action: Terminated by C███████ C███ Partner, Northshore Office

Name and Title of Person(s) Responsible: see above.

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
See attached

_____

**7. What reason(s) were given to you for the acts you consider discriminatory?** By whom? His or Her Job Title?
See attached

_____

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. N/a | | | |
| B. | | | |

2

Of the persons in the same or similar situation as you, who was treated *worse* than you?

<u>Full Name</u>          <u>Race, Sex, Age, National Origin, Religion or Disability</u>   <u>Job Title</u>        <u>Description of Treatment</u>

A. N/a _____

_____

B. _____

_____

Of the persons in the same or similar situation as you, who was treated the *same* as you?

<u>Full Name</u>          <u>Race, Sex, Age, National Origin, Religion or Disability</u>   <u>Job Title</u>        <u>Description of Treatment</u>

A. N/a _____

_____

B. _____

_____

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.  Please check all that apply:          ☐ Yes, I have a disability
                                          ☐ I do not have a disability now but I did have one
                                          ☐ No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).
N/a _____

_____

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
     ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?
N/a _____

_____

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?   N/a
     ☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)

_____

Describe the changes or assistance that you asked for: _____

_____

_____

How did your employer respond to your request? _____

_____

**13.  Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|-----------|-----------|------------------------|-----------------------------------------------|

A. _____

_____

B. _____

_____

**14.  Have you filed a charge previously on this matter with the EEOC or another agency?  ☐ Yes  ☑ No**

**15.  If you filed a complaint with another agency, provide the name of agency and the date of filing:** _____

_____

**16.  Have you sought help about this situation from a union, an attorney, or any other source?  ☑ Yes  ☐ No**
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

_Jill Craft & Brett Covered: Jill L. Craft, Attorney at Law, LLC; contacted on February 21, 2020_

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

**BOX 1**  ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

**BOX 2**  ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that **the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.**  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____        _May 6, 2020_
          Signature                              Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

**Brief Background of Claim:**

I interviewed with Milling Benson Woodward, LLP ("Milling") on or about December 7, 2018. Partners, S███████████ E███ N████ P███ R████ L███ and C█████ C████████ conducted the interview. During my interview at Milling, I was told that Milling is a family-friendly firm, especially the Northshore Office, and Milling values putting family first. During the interview, I was asked when I planned to have children, and was told that it would be beneficial for the job to refrain from having a child in the near future. I began working at Milling on January 16, 2019. Shortly thereafter, I became pregnant.

Milling did not have a maternity policy. When I approached the managing partner, N████ P███ about my pregnancy, he suggested that I present a maternity leave proposal to him. During our discussion, Mr. P███ encouraged me that Milling would offer an accommodating and desirable maternity leave. During this discussion, I voiced my desire for a minimum of four (4) to six (6) paid leave, along with being off from work for a total of eight (8) weeks, and returning full-time after twelve (12) weeks. Mr. P███ voiced his concern between setting a maternity policy that would apply to every female employee, or creating a policy tailored to the individual female employee. Also, during this conversation, Mr. P███ asked me if I planned to breastfeed and encouraged me to do so. He talked about the current size of my breasts and how my breasts will only get larger.

During my pregnancy and while working, Mr. P███ continued to make comments about the shape of my body and weight. In particular, he told me that I could expect to lose thirty (30) to fifty (50) pounds after having the baby because of breastfeeding.

I sent a proposal to Mr. P███ requesting six-weeks paid maternity leave; requested to return part-time after eight (8) weeks, and continue part-time status for two (2) weeks, to ease back into working; and requested to return full-time after the two-week part-time status. Mr. P███ brought my proposal to the Management Committee. On July 30, 2019, he notified me via email that the Management Committee agreed to pay me for two (2) weeks "absence when [I] deliver" the baby. "After that, [I] will not be paid." Mr. P███ continued that work will be waiting for me upon my return. Additionally, Milling would make pay arrangements if I began working from home during my leave. Mr. P███ stated that I would return to my current pay scale when I resumed full-time work.

After receiving Milling's decision, I approached S███████████ E███ to discuss my disappointment. She encouraged me to speak with Mr. P███ about my concerns. I approached Mr. P███ to voice these concerns. I suggested that Milling's decision was not supportive of women to start a family and have the necessary time home to bond with their new baby. Further, I was told that Milling was a family-friendly firm and wanted to become more progressive. I encouraged that in order to become progressive Milling should create and set policies that are attractive to female lawyers and encouraging to mothers to return to work postpartum; however, Milling's proffered two-weeks paid

maternity leave would be setting the standard for future female lawyers of child-bearing age.

The Management Committee did not budge on its offer to pay me for two-weeks once I had my child. I left for maternity leave on October 3, 2019. My child was born on October 8, 2019.

Prior to leaving on maternity leave, I sent an email to Mr. P███ stating that I would like to return to work after eight (8) weeks of leave on a part-time status, for two (2) weeks only. I believed that this would help ease me back into work and leaving my firstborn child. Further, I stated that after these two (2) weeks of part-time status, I would return to work full-time. During my maternity leave, on November 6, 2019, I received an email from Mr. P███ discussing Milling's expectation upon my return. He stated that the Management Committee did not want me to return on a part-time basis. Instead, the Management Committee would prefer me return when I was ready "and to be prepared to work a full schedule of 165 billable hours per month." He asked if I would be ready to return on January 30, 2020. I wrote back to Mr. P███ voicing my desire for part-time status for a week or two to help ease back into work-life after having a baby. Milling declined and offered me to return on February 3, 2020.

I returned from maternity leave on February 3, 2020.

On February 7, 2020, at approximately 1:00 P.M., I emailed N███████ P███, Managing Partner of the Northshore Office of Milling Benson Woodward, LLP ("Milling"), a proposal for a one-day flexible schedule ("the Email"). The Email stated that regardless of Milling's decision – to decline the proposal or accept – I would continue to meet Milling's expectations of me, and I trusted that the proposal would not hurt my position with the firm. The Email requested that Milling consider this one-day flexible schedule for one year, during my child's infancy. In this Email, I proposed:

- "4 full days in the office
- 1 flex day (firm chooses) - flexible to work in the office, if necessary, to meet deadlines or prep for trial; available for court and client meetings; otherwise, generally not a work day except that I would be accessible by phone or email to the firm and clients
- Salary: 20% reduction from my current salary (benefits maintained); although, I do not expect this much reduction in my productivity
- I propose that we review quarterly to determine if this arrangement is working for the partners whose work I am assigned. If agreeable to all, I would like to plan for a year on this schedule."

The objective of this proposal was the find a healthy, sustainable way to support my personal role as a mother and my professional role as a lawyer. Mr. P███ responded to the Email stating that he would take this proposal to the Management Committee at their meeting on February 12, 2020.

I should note that prior to sending the Email, I spoke with A█████ C█████ who is a partner at Milling, to gauge how he thought the Management Committee would perceive this proposal. He believed the Email to be well thought out, succinct, and a great idea for Milling to support. He suggested that I send the Email to Mr. P█████ on Friday, February 7, 2020, because everyone is typically in a jolly mood on Fridays. I followed his advice and did so.

On or about Monday, February 10, 2020, Milling Benson Woodward, LLP ("Milling") held a quarterly meeting with associates to discuss marketing. As an associate of Milling, I participated in this meeting. All associates and partners, C█████ L█████ and S█████ E█████ were in attendance. Following the meeting, on Tuesday, February 11, 2020, Mr. L█████ came into my office to check on me. He stated that I looked "unhappy" generally and at the marketing meeting. I explained that returning to work after maternity leave was an adjustment, as I expected it to be. Mr. L█████ commiserated with me and expressed the importance of a mother staying home with her baby, referencing his personal family-life by indicating that he wanted his wife to stay home with their children while they were babies.

Further, I discussed my concern with adjusting to life as a new mother and an attorney with billable hours. Mr. L█████ proffered and encouraged that I may want to find a job that was not as demanding as practicing law. He stated, "We want you to be happy and support you. Your quality of life is important." I responded to Mr. L█████ candidly stating that I did not feel like my quality of life, or the other associates' individual quality of life, was important to Milling due to the partners' demands of the associates. I stressed my understanding of Milling being a business and the bottom-line matters. He encouraged me to take a more active role in communicating with partners, especially C█████ C█████ but I voiced my hesitation regarding Mr. C█████ approachability and encouragement towards associates, especially me.

Lastly, Mr. L█████ and I discussed the email proposing one flexible day. Mr. P█████ forwarded my email to all partners in the Northshore Office as well as those on the Management Committee. Mr. L█████ expressed his concern that Mr. C█████ and Mrs. H█████ E█████ would take issue with my proposal of a flexible day and likely oppose it at the Management Committee the following day, February 12, 2020.

When I arrived at the office on the morning of February 17, 2020, I noticed that my workload significantly declined. At Milling, associates are assigned cases or claims to work on, and assigned certain tasks to complete related to these cases or claims. I approached the female partner, S█████ E█████ about my lack of work. She stated that N█████ P█████ was supposed to talk to me.

Around 2:00 P.M. on February 17, 2020, C█████ C█████ entered the doorway of my office and asked me to come into N█████ P█████ office to meet with both men. Mr. P█████ stated that the Management Committee at the meeting held on February 12, 2020,

3

rejected my proposal for a one-day flexible schedule. Additionally, Mr. P█████ stated that the Management Committee went further and decided to let me go at the end of February 2020. He stated that Milling would allow me to stay on for two (2) weeks in order to secure another job, and will provide a "glowing recommendation" if one is needed. At the end of the two (2) weeks, I would receive two-weeks' severance pay. Mr. P█████ stated that it was a unanimous vote of the male and two (2) female members of the Management Committee. He made it a point to state that the two (2) female members, S███████████ E█████ and S██████ L████ both voted to reject my proposal.

Mr. P█████ stated that the firm needed a full-time employee, and my proposal indicated to the members of the Management Committee that I did not want to be full-time. He further stated that due to the timing of my proposal, it indicated to the members that I did not want to be a full-time employee.

Mr. P█████ stated that, although he hated to admit it, Milling is "not conducive to a mother-baby relationship." He further stated that this separation is not indicative of my work as a lawyer and that I am a great lawyer.

Mr. C█████ stated that he believes that I do not take my job serious enough because I do not put in the long hours that a young lawyer should. He provided further guidance on this by stating that I should be putting in the same hours, or more, as him, which is to be at the office from 8:00 A.M. until 6:30 P.M. every day, not leaving before he does. Mr. C█████ further stated that I should find a career that is not as demanding as the practice of law to suit my desire to spend time with my child.

As this meeting concluded, Mr. P█████ asked if I had any questions. I did not ask any questions. I thanked Mr. P█████ and Mr. C█████ walked out of Mr. P█████ office, and returned to my office.

Shortly following this meeting, Mr. P█████ sent an email entitled, "█████ F█████ cessation of employment at Milling Benson Woodward, Feb. 28, 2020" to me and the following equity partners: A█████ C█████ C█████ C█████ Ra██ L██ R██ S█████ S█████████████ E█████ and S██████ L████ This email is attached hereto. In short, the email stated that Milling was terminating my employment with the firm, as of February 28, 2020, because I requested a part-time schedule. Mr. P█████ also stated that Milling would give me two (2) weeks severance pay if I sign a general release. I did not sign the general release.

In the days following my termination, my workload dwindled considerably, and I was billing less than 2.70 hours per day. After consulting with lawyers, my last day at Milling Benson Woodward LLP was February 21, 2020.

At approximately 3:00 P.M. on February 17, 2020, my previous secretary, M█████ B█████ entered into my office seeking help with a petition. She subsequently told me that the office manager, T█ M█████ informed the other secretaries and receptionist

that I put in my two-weeks at Milling. Ms. M██████ further stated that this was confidential and that should could not say anything else.

---

On February 18, 2020, at approximately 9:27 A.M., secretary, T██ C██████ entered my office to speak with me. She apologized to me for what the partners at Milling had done (terminate me) and voiced her disgust for their actions. She asked to speak with me about this situation and asked me to lunch.

---

On February 18, 2020, equity partner, A████ C██ entered my office to discuss my termination and the email sent by Mr. P█ following the meeting whereby I was terminated. Mr. C██ kindly asked how I was doing and stated that my conversation with Mr. P██ must have been surprising to me, to which I agreed. I responded that Mr. P████ email regarding my cessation was an inaccurate account of my proposal for a one-day flexible schedule, and that I did not request a part-time schedule. Mr. C██ agreed that I did not ask for a part-time schedule, and stated that he, along with S█ L██ told the equity partners this during the Management Committee meeting on February 12, 2020. Mr. C████ stated that the partners concluded that I was moving towards a part-time schedule. I disagreed, and he stated that he knew I did not request a part-time schedule and voiced his frustration. He stated that the partners were concerned with my well-being of working full-time and the hours required. I stated that the partners, including Mr. P██ and Mr. C████ did not attempt to take steps to accommodate or discuss my proposal and how it would work for Milling.

I told Mr. C██ that during the meeting with Mr. P██ and Mr. C██ it was stated that Milling was not conducive to a mother-child relationship. Mr. C██ stated that there is a young and old battle occurring in the firm, and there are a lot of "old guys" who "just don't get it." Mr. C████ voiced his frustration and how the mentality at Milling drives him crazy. I also told Mr. C████ that Mr. C████ stated that I do not take my job seriously because I'm not in the office from 8:00 A.M. until 6:30 P.M. I explained to Mr. C██ that my child takes a bath at 6:15 P.M. and goes to sleep immediately following his bath. Mr. C████ stated that Mr. C████ "is never going to get it" and Mr. C██ has the "mentality of being in a chair."

Further, Mr. C████ elaborated on the "unanimous vote" at the Management Committee meeting to terminate my employment with Milling. He stated that the members argued and debated over my proposal and termination. He stated that when the vote was taken, some members said "aye", and those that opposed were not counted. Mr. C████ further stated that Ms. I████ believed my proposal to be reasonable, especially because I proposed a twenty percent (20%) reduction in my salary. Mr. C████ agreed with her and suggested to the Management Committee that Milling implement the one-day flexible schedule to see if it works for a period of time. Mr. C████ also stated that Mr. P██ was advocating in favor trying the one-day flexible schedule. Mr. C████ stated that "they" were voted down. Mr. C████ stated that during the Management



Committee meeting, H███ B█ stated that my proposal would never work and "we need to just do this now."

On or about February 18, 2020, M███ B█████ entered my office and informed me of a text message that was sent by T██ M████ to a group containing Milling staff. She showed me the text message sent by Ms. M██ on February 18, 2020, at 9:54 A.M. that stated, "Lol. Especially now. J███ was let go and I know it's bc of the evil bitch here!" Ms. B█████ confirmed that the "evil bitch" Ms. M██ was referring to is S██████ ███████ E██████

On February 19, 2020, T██ M████, office manager, came into my office to apologize to me for being terminated. She wanted to put me in touch with a few headhunters to help me locate a new job, and "probably something part-time." Ms. M████ stated that she does not know what is wrong with the people at Milling, and that she gets the feeling that S███████ ███████ E███████ was an integral part of my termination.

6

Gmail - Fwd: Maternity Leave, for Jenna Fugarino Glenn

5/6/20, 1:35 PM

 Gmail

## Fwd: Maternity Leave, for Jenna Fugarino Glenn

Jenna Fugarino ████████████
To: ██████████████

Mon, Feb 17, 2020 at 4:07 PM

**Jenna Fugarino**
Milling Benson Woodward L.L.P.
████████████

Office: ██████████
Direct: ██████████

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---------- Forwarded message ----------
From: N███████████████
To: J███████████████
Cc: R███████████████ D███████████ J█████████████
<███████████████ R████████ S█████████
████████
Bcc:
Date: Tue, 30 Jul 2019 14:51:17 -0500
Subject: Maternity Leave, for Jenna Fugarino Glenn

Jenna,



The Firm will pay you for 2 weeks absence when you deliver your new baby. After that, you will not be paid. When you return we will have work waiting for you. If you start working from home, we can discuss then what pay arrangements we can make. When you resume full time work, you will return on your current pay scale.

If you have questions about this, please tell me.

Gmail · Re: maternity leave and return to full time work   5/8/20, 2:04 PM

# M Gmail

## Re: maternity leave and return to full time work



N███████████
To: ███████████ Je█████████████████                    Wed, Nov 6, 2019 at 1:37 PM
Cc: R█████████████████████ C████████████████
█████████████ Ri█████████████████           S██████████   J████████
████████████████████

Jenna,

I am most pleased that you had a beautiful child and that your labor went well. I am sure that you are enjoying your new son, ███████ despite all the sleeplessness and new experiences. You, your son and your husband are in my prayers.

I am writing to discuss with you the Firm's expectations upon your return. The Management Committee does not want you to return on a part time basis. Instead, they would like you to come back when you are ready and to be prepared to work a full schedule of 165 billable hours per month. Do you think that you can return on January 30? If not, please tell me when you think you can return to a full schedule.

We look forward to seeing you. And, when you get the chance, please send us some pictures.

Kind Regards and Congratulations,

N██████ P████████



N██████████████
████████████████████
Fax ███████████████



5/6/20, 2:04 PM

Cell Phone ███████
Direct Dial ███████
Email ███████

This EMail transmission and any attached accompanying documents are PRIVILEGED and CONFIDENTIAL. The information is intended only for the use of the individual or entity named above and contains confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified not to read, disclose, copy, distribute or take any action in reliance on the contents of this email as such actions are strictly prohibited. If you have received this email transmission in error, please immediately notify us by reply or by telephone ███████ and permanently delete and remove this email in its entirety, including any attachments and all contents, from your system and server. Thank you.

>>> Jenna Fugarino 9/10/2019 3:49 PM >>>
All:

My last day will be Friday, October 4th. The baby is scheduled to arrive on October 8th. I am not anticipating on leaving earlier than October 4th, but in the world of babies and pregnancy, you never know. I have outstanding work to complete for some of you. All of these tasks will be completed prior to my leave. If there is anything else you need from me, please let me know.

As you all are aware, I do not have a "set" maternity leave. I plan to return part-time at some point prior to returning full-time, and will provide adequate notice.

Thank you all for being patient with me during this time. It's been a hefty adjustment, and I know this is not what anyone wanted or expected when hiring me.

I'll be in touch if anything changes prior to October 4th.


Jenna Fugarino
**Milling Benson Woodward L.L.P.**
███████

Office: ███████
Direct: ███████



## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

 Gmail

## Fwd: Proposal of One-Day Flexible Schedule

Jenna Fugarino ███████████████████
██████████████████

Mon, Feb 17, 2020 at 3:16 PM

**Jenna Fugarino**
Milling Benson Woodward L.L.P.
███████████████

Office: ██████
Direct: ██████████
███████████████

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---------- Forwarded message ----------
From: Jenna Fugarino ███████████████████
To: N███████████████████████████
Cc: J███████████████████
Bcc: ██████████████████████
Date: Fri, 07 Feb 2020 13:11:11 -0600
Subject: Proposal of One-Day Flexible Schedule

Normand,

First and foremost, thank you for allowing me to have the time home with ████████ I know that being down one associate posed a burden to the firm. Second, I love and am dedicated to my job. I trust that this proposal will not hurt my position with the firm because you know that. And if the answer is "no," then I will respect that decision and keep on showing up.

That said, I ask that you consider, for one year, a flexible schedule for me. I propose:

- 4 full days in the office
- 1 flex day (firm chooses) - flexible to work in the office, if necessary, to meet deadlines or prep for trial; available for court and client meetings; otherwise, generally not a work day except that I would be accessible by phone or email to the

firm and clients
- Salary: 20% reduction from my current salary (benefits maintained); although, I do not expect this much reduction in my productivity
- I propose that we review quarterly to determine if this arrangement is working for the partners whose work I am assigned. If agreeable to all, I would like to plan for a year on this schedule.

My objective is to find a healthy, sustainable way to successfully practice law and take care of ██████ and myself. As you know, this time is precious with him. I think that implementing this change will allow me to maximize success and minimize distraction. So many great things are happening in my life, professionally and personally, and I believe that this will provide the balance I need to avoid burnout and ensure that my personal and professional roles support, and do not detract from, each other.

I am sending this in an email just for you to be able to think on it, please, and discuss with Ma██████ others in the firms, and then discuss with me or respond at your convenience.

Thank you, ██████████

Jenna

Jenna Fugarino
Milling Benson Woodward L.L.P.

Direct:

 Gmail

## Fwd: Re: Jenna Fugarino cessation of employment at Milling Benson Woodward, Feb. 28, 2020

Jenna Fugarino <█████████████████>                              Mon, Feb 17, 2020 at 3:58 PM

Jenna Fugarino
Milling Benson Woodward L.L.P.
████████████████
Office: ██████████
Direct: ████████████

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

--------- Forwarded message ---------
From: N███████████████████████
To: Je██████████████████████
Cc: A█████████████████████████████████████████████████████████████████
██████████████████████████████████████████████
Bcc:
Date: Mon, 17 Feb 2020 15:55:56 -0600
Subject: Re: Jenna Fugarino cessation of employment at Milling Benson Woodward, Feb. 28, 2020

Jenna,



I am writing this to confirm what C███ myself and you just discussed in my office. We are disappointed to have to advise you that your employment at Milling Benson Woodward LLP will end on Friday, Feb. 28. After your departure and at the next payroll event, if you agree to sign our general release, you will

be given 2 weeks severance pay in addition to any other payments the Firm owes to you.

You are a fine person and we wish you the best. As we told you when you left for pregnancy leave, we need a lawyer on a full time basis. Upon your return you asked for part time status. We certainly understand the needs that a newborn child demand. Unfortunately, we are not big enough to absorb a part time lawyer. Your case was discussed by all of the equity partners, and the decision to take this action was unanimous.

During these next 2 weeks, you are free to seek a position at another Firm. You can use our office, staff and equipment to seek that position. We will be pleased to give you a good recommendation. We wish great success for you and that your family will grow and prosper.

Best Regards,



Fax
Cell Phone
Direct Dial

This EMail transmission and any attached accompanying documents are PRIVILEGED and CONFIDENTIAL. The information is intended only for the use of the individual or entity named above and contains confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified not to read, disclose, copy, distribute or take any action in reliance on the contents of this email as such actions are strictly prohibited. If you have received this email transmission in error, please immediately notify us by reply or by telephone and permanently delete and remove this email in its entirety, including any attachments and all contents, from your system and server. Thank you.



**U.S. Equal Employment Opportunity Commission**
**New Orleans Field Office**

500 Poydras Street
Suite 809
New Orleans, LA 70130
(504) 635-2561
TDD: 1-800-669-6820
Fax: (504) 595-2884
1-800-669-4000

Respondent: MILLING BENSON WOODWARD
EEOC Charge: 461-2020-01707

July 29, 2020

Jenna K. Fugarino



Dear Ms. Fugarino:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge.

The information you gave us is not adequate to determine how we should handle this case. More information is needed before we can continue. Therefore, the Commission requests that you provide the information listed below within 15 days from the date of this letter. Documentation to support any of your answers may also be provided. Failure to provide a full response to this office at the above address within 15 days from the date of this letter will result in dismissal of your charge and issuance of a right to sue without any further contact with you.

1. Why do you believe you were discriminated against due to your Sex/ Female (pregnancy)?
2. What was the reason given for your discharge? Did you receive a dismissal slip? If so, please email to m_____@eeoc.gov, s_____@eeoc.gov or O_____@eeoc.gov.
3. When did Mr. N___ P___ make comments about your breast and body? What was your response? Did anyone hear Mr. P___ make those remarks? If so, who?
4. When did you send the maternity leave proposal to Mr. P___? What reason was given to you for the proposal being rejected and only approved for 2-weeks?
5. Who is Mr. L___? What is his first name and his position?
6. Who is Mr. C___? What is his first name and his position?
7. What was the reason given to you that the proposal for one-day flexible schedule was rejected?
8. Did you stay for those two weeks?
9. Your attachment cuts off at page 4. Please submit the rest of the attachment.
10. Please provide a copy of your check stub
11. What do you think the company will tell the commission about you?
12. Please answer the above questions and complete the attached questionnaires.

Note: When the claim of discrimination includes an analysis of how you have been treated as compared to another employee (i.e. a comparator), details regarding the gender, race, color, national origin or religion (as applicable) of yourself and the comparator must be included along with details regarding the job responsibilities and manager for both yourself and the comparator.

Sincerely,

*Mildred B. Johnson*

_____

Mildred B. Johnson
(504) 635-2553

JILL L. CRAFT
Attorney at Law
330 Government Street
Baton Rouge, LA 70802

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 461-2020-01707 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Jenna K. Fugarino | ███████████ | █████ |
| Street Address                    City, State and ZIP Code | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| MILLING BENSON WOODWARD | 15 - 100 | █████████ |
| Street Address                    City, State and ZIP Code | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| ☐ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | | ☐ GENETIC INFORMATION |
| ☒ OTHER (Specify)  pregnancy | | | | |

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-30-2019 | 02-17-2020 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

During my interview with Milling Benson Woodward LLP ("MBW"), I was told that it would be best if I refrained from beginning a family. I began my employment with MBW on January 16, 2019, as an associate attorney earning $75,000 per year. Shortly thereafter, my husband and I found out that we were expecting our first child. MBW did not have a maternity leave policy. On July 30, 2019, I was notified via email from N█████ P███ ("Mr. P████"), Managing Partner, that the Management Committee ("Committee") agreed to pay me "for 2 weeks absence when [I] deliver" the baby; after that, I would be unpaid for the remainder of my maternity leave. I disagreed with the decision to pay me for only 2 weeks and attempted to negotiate my maternity leave. MBW did not budge on its proffered 2-weeks paid maternity leave.

My maternity leave began on October 4, 2019. I had my son on October 8, 2019. Prior to beginning maternity leave, I emailed Mr. P███ stating that I would return to work after 8 weeks of leave. I stated my desire to work on a part-time basis for 2 weeks only, in order to help with the adjustment of life as a lawyer and new mother. After these 2 weeks, I would return to full-time status. On November 6, 2019, while on leave, Mr. P████ emailed me discussing MBW's expectations upon my return and rejecting my request to return on a part-time adjustment period for 2 weeks. He stated that I could return to work full-time on January 30, 2020. I responded to Mr. P███ voicing my desire for part-time status for a week or two to help ease back into work after having my first child. MBW declined and offered for me to return full-time on February 3, 2020. I returned to work full-time on

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 08/06/2020          _[signature]_ | |
| Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 461-2020-01707 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

February 3, 2020. On February 7, 2020, at the advice and encouragement of A████ Ca████ ("Mr. ████, Partner, I emailed Mr. P███ a proposal for a one-day flexible schedule. The email requested that MBW consider this one-day flexible schedule for 1 year during my child's infancy. In this email, I proposed:

- 4 full days in the office;
- 1 flex day (MBW chooses) – flexible to work in the office, if necessary, to meet deadline or prep for trial; available for court and client meetings; otherwise, generally not a work day except that I would be accessible by phone or email to MBW and clients;
- 20% reduction in salary (benefits maintained); although I did not expect this much reduction in my productivity; and
- Quarterly review to determine if this one-day flexible schedule was working for partners whose work I was assigned. If agreeable to all, the schedule would continue for 1 year.

The objective of this proposal was to find a healthy, sustainable way to support my personal role as a mother and my professional role as a lawyer. Mr. P███ responded stating that he would present this proposal to the Committee at its meeting on February 12, 2020.

On February 17, 2020, I noticed that my workload declined significantly. I approached S███ He████ E█████, Partner, about my lack of work, and she stated that Mr. P███ would speak with me about it. Around 2:00 p.m., C██████ C█████ ("Mr. C█████"), Partner, came to my office and requested I join him and Mr. P███ in Mr. P███ office. Mr. P███ stated that the Committee rejected my proposal for a one-day flexible schedule and that the Committee took it one step further and decided to terminate my employment with MBW at the end of February 2020. Mr. P███ stated that this was a unanimous decision among the male and two-female Committee members; however, I later learned from Mr. C████ that it was not unanimous. Mr. P███ stated that the Committee believed based on my proposal and the timing of my proposal that I wanted to be part-time. Mr. P███ stated that MBW is "not conducive to a mother-baby relationship." He further stated that this separation was not indicative of my work as a lawyer and that I am a great lawyer. He offered to provide me with a "glowing recommendation." Additionally, Mr. C█████ stated that I did not take my job serious enough because I was not in my chair at the office as early as or as late as he was each day. Mr. C████ further stated that I should find a career not as demanding as the practice of law if I wanted to be a mother.

I was notified of my discharge on February 17, 2020. My last day at MBW was February 21, 2020. I did not sign a general release. MBW employs over 15 persons.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 08/06/2020<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 461-2020-01707 |

|  |  |  |
|---|---|---|
| **Louisiana Commission On Human Rights** | | and EEOC |
| *State or local Agency, if any* | | |

I believe that I have been discriminated against because of my sex, female (pregnancy), and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, in that MBW does not have a maternity leave policy, discriminates against female employees, and retaliates against employees. Further, I was subjected to unwelcomed sexual comments by Mr. P▇▇▇ about the size and growth of my breasts during and after pregnancy; my weight and weight loss during and after pregnancy; breastfeeding and encouraging breastfeeding; the shape and curve of my body and the look of it in certain clothing.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 08/06/2020      *Charging Party Signature*<br>*Date* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.