UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNA FUGARINO,**<br>Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-594** |
| **MILLING, BENSON,**<br>**WOODWARD LLP,**<br>Defendant | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by Milling, Benson, Woodward LLP ("Defendant" or "MBW").[1] The motion is opposed.[2] For the reasons that follow, the motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

On March 15, 2021, Plaintiff initiated this suit in the Civil District Court for the Parish of Orleans, against Defendant, her former employer, bringing claims of sex and pregnancy-based discrimination, harassment, retaliation, and reprisal under Title VII and Louisiana Revised Statutes §§ 23:301, *et seq.*[3] On March 24, 2021, Defendant removed the action to this Court.[4] On April 23, 2021, Defendant filed its first Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[5] In her opposition to Defendant's first motion to dismiss, Plaintiff requested the "opportunity to amend" her complaint.[6] The Court granted Plaintiff leave to file an

---

[1] R. Doc. 82.
[2] R. Doc. 102.
[3] R. Doc. 1-1 at ¶¶ 19, 22.
[4] R. Doc. 1.
[5] R. Doc. 8.
[6] R. Doc. 9 at 3, 12.

1

amended complaint.[7] On June 11, 2021, Plaintiff filed her first amended complaint.[8] As a result, the Court denied Defendant's first motion to dismiss without prejudice.[9]

In her amended complaint, Plaintiff alleges four causes of action, as follows: (1) sex-based and pregnancy-based harassment creating a hostile work environment, under Title VII and Louisiana Revised statutes §§ 23:301 *et seq*; (2) sex-based and pregnancy-based discrimination culminating in reduced work-load and termination, under Title VII and Louisiana Revised statutes §§ 23:301 *et seq*; (3) retaliation under Title VII; and (4) reprisal under Louisiana Revised statutes § 23: 967.[10] Defendant moved to dismiss Plaintiff's discrimination claims under Rule 12(b)(6),[11] which the Court denied.[12]

In the instant motion, Defendant first seeks summary judgment on Plaintiff's hostile work environment claim.[13] Defendant then seeks summary judgment on Plaintiff's retaliatory hostile work environment claim.[14] Plaintiff opposes the summary judgment, arguing genuine disputes of material fact exist.[15] Defendant filed a reply.[16]

## FACTUAL BACKGROUND

### I.  Undisputed Facts

The following facts are not in dispute. Jenna Fugarino began working for MBW as an associate attorney on January 16, 2019.[17] When her employment began, Plaintiff

---

[7] R. Doc. 15.
[8] R. Doc. 18.
[9] R. Doc. 19.
[10] R. Doc. 18 at ¶ 22; *see also* R. Doc. 25 at p. 1.
[11] R. Doc. 24.
[12] R. Doc. 29.
[13] R. Doc. 82 at p. 1.
[14] *Id*. at p. 1.
[15] R. Doc. 102.
[16] R. Doc. 106.
[17] R. Doc. 89 at ¶ 1; *see also* R. Doc. 102-1 at ¶ 1. Plaintiff admits that she began working at MBW on January 16, 2019, but adds that her interaction with Defendant began in 2018 when she interviewed for a position with the firm.

worked for Randall Loewen and Shannon Eldridge, two partners at the firm.[18] The majority of Plaintiff's work at MBW was given to her by Shannon Eldridge.[19] Plaintiff billed under 165 hours a month for the months she was employed at MBW.[20] At some point between mid-March 2019 and early April 2019, Plaintiff expressly told lawyers at MBW that she was pregnant.[21] Both Shannon Eldridge and Normand Pizza, another partner at the firm, seemed excited when they learned Plaintiff was pregnant, and MBW partner Chadwick Collings, with whom Fugarino also did some work, walked into Plaintiff's office to congratulate her.[22] It is undisputed that Normand Pizza never touched Plaintiff.[23]

## II. Disputed Facts

Plaintiff argues Defendant's motion for partial summary judgment should be denied because disputed issues of material fact exist.

First, Defendant contends it is an undisputed fact that Plaintiff's work, at the beginning of her employment, was limited to working for partners Randall Loewen and Shannon Eldridge, pointing to Plaintiff's deposition testimony.[24] In opposition, Plaintiff

---

[18] R. Doc. 89 at ¶ 2; *see also* R. Doc. 102-1 at ¶ 2. Plaintiff denies that her work was limited to assignments with Loewen and Eldridge—she contends she also worked with Normand Pizza.
[19] R. Doc. 89 at ¶ 3; *see also* R. Doc. 102-1 at ¶ 3.
[20] R. Doc. 89 at ¶¶ 7-8; *see also* R. Doc. 102-1 at ¶¶ 7-8. The parties dispute whether this was a billing requirement, but Plaintiff does not deny that she did not bill 165 hours monthly.
[21] R. Doc. 89 at ¶ 9; *see also* R. Doc. 102-1 at ¶ 9. Plaintiff argues her pregnancy was obvious to Defendant prior to her expressly telling MBW, pointing to the deposition of a partner at the firm who testified to that effect.
[22] R. Doc. 89 at ¶ 10; *see also* R. Doc. 102-1 at ¶ 10. Plaintiff denies this but includes no citation to the record. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court deems this statement of fact uncontested for purposes of the instant motion. FED. R. CIV. PRO. 56(e)(2).
[23] R. Doc. 89 at ¶ 44; *see also* R. Doc. 102-1 at ¶ 44. The parties agree that Plaintiff testified as to certain incidents of complained-of conduct that forms the basis of her lawsuit against MBW. *See* R. Doc. 89 and R. Doc. 102-1. Defendant does not agree, however, that this conduct occurred. In reality, the underlying facts are in dispute.
[24] R. Doc. 89 at ¶ 2 (citing Deposition of Jenna Fugarino ("Exhibit A") at p. 23).

admits she worked with Loewen and Eldridge, but further contends she also worked for Normand Pizza, also pointing to her deposition testimony.[25]

Second, relying on Plaintiff's deposition testimony, Defendant contends it is an undisputed fact that Plaintiff worked for Normand Pizza minimally.[26] In opposition, Plaintiff admits that a significant portion of her work was given to her by Shannon Eldridge, but she disputes Defendant's characterization of her work with Normand Pizza as minimal.[27]

Third, Defendant contends it is an undisputed fact that, at all times, a 165-hour billing requirement was imposed on Plaintiff, relying on Plaintiff's deposition testimony.[28] In opposition, Plaintiff admits a 165-hour requirement was imposed on Plaintiff, but argues it was communicated to her while she was on maternity leave, and that it was not enforced or cognizable for any other non-pregnant associate in the years before, during, and after Plaintiff's employment at MBW, relying on deposition testimony[29] of Plaintiff, Shannon Eldridge, Andrew Capitelli, Charles Loewen, and Chadwick Collings.[30]

Fourth, the parties dispute whether Plaintiff's proposed modified work schedule amounted to a reduced or a hybrid work schedule, whether the partners at MBW understood Plaintiff's proposal to be that she work on a part-time schedule, and the nature of MBW's rejection of Plaintiff's proposed modified work schedule. To that end,

---

[25] R. Doc. 102-1 at ¶ 2 (citing Exhibit A at pp. 25-28).
[26] R. Doc. 89 at ¶¶ 4-6 (citing Exhibit A at pp. 26-27).
[27] R. Doc. 102-1 at ¶ 4 (citing Exhibit A at pp. 25-28).
[28] R. Doc. 89 at ¶ 7 (citing Exhibit A at pp. 23, 80-81).
[29] As well as related exhibits.
[30] R. Doc. 102-1 at ¶ 7 (citing Exhibit A at pp. 69-20, 76, 80-81; Deposition of Andrew Capitelli at pp. 24-51, 74, 80-81; Deposition of Charles Loewen at p. 19; Deposition of Shannon Eldridge at pp. 31-36; Deposition of Chadwick Collings at Exhibit 30).

Defendant contends it is an undisputed fact that: (1) Plaintiff emailed Pizza on February 7, 2020, asking if MBW would allow her to work four days per week with a 20% reduction in salary;[31] (2) due to the timing of the proposal and the proposal itself, the partners at MBW believed Plaintiff did not want to work full-time and, instead, wanted to work part-time;[32] and (3) MBW denied Plaintiff's request because, while Defendant understood the "needs that a newborn child demand," the firm did not have the capacity to absorb a part-time lawyer.[33] Conversely, Plaintiff argues: (1) Plaintiff's email to Pizza on February 7, 2020, asking if MBW would allow her to work 4 days in-person and 1 day out of the office working from home, with the encouragement of Andrew Capitelli, was not a request for a part-time schedule, but instead was a request for a flexible work schedule;[34] (2) partners at MBW, like Andrew Capitelli, knew Plaintiff had not requested a part-time work schedule;[35] and (3) a minute entry from a joint meeting of MBW's Management Committee and equity partners to discuss, *inter alia*, Plaintiff request for a modified work schedule states "Jenna Fugarino's Proposal of One-Day Flexible Schedule. Rejected, Normand will let her know that she may return to work full time."[36]

Fifth, Defendant contends it is an undisputed that Plaintiff testified she did not know whether her work product necessarily suffered as a result of Normand Pizza's

---

[31] R. Doc. 89 at ¶ 21 (citing Exhibit A at pp. 74-77; citing Exhibit D (Plaintiff's email to Normand Pizza)).
[32] R. Doc. 89 at ¶ 24 (citing R. Doc. 18-2 at p. 9; citing Plaintiff's Answer No. 7 to the EEOC's request for information).
[33] R. Doc. 89 at ¶ 25 (citing Email dated February 17, 2020 ("Exhibit F")).
[34] R. Doc. 102-1 at ¶ 21 (citing Exhibit A at pp. 93-94; citing Declaration of Jenna Fugarino ("Exhibit C"); citing Jenna Fugarino's EEOC Charge at p. 3).
[35] R. Doc. 102-1 at ¶ 24 (citing Deposition of Andrew Capitelli; citing Exhibit A at pp. 92-94). A recording of Andrew Capitelli, which the Court reviewed, reveals he knew Plaintiff did not request a part-time work schedule, and that he relayed that to other partners at MBW. Instead, Mr. Capitelli indicated partners at MBW were concerned Plaintiff's request for a modified work schedule was "moving towards" a part-time work schedule, which he understood was not the case, and found "frustrating." Mr. Capitelli further acknowledged many of the partners at MBW are "old guys," which might explain their receptiveness to a flexible work schedule for working mothers because "they don't get it."
[36] R. Doc. 102-1 at ¶ 25 (citing Deposition of Andrew Capitelli, Exhibit 30).

alleged comments.[37] In opposition, Plaintiff does not deny she testified to this effect, but further argues the harassment was so severe and pervasive that it negatively affected her emotionally and her ability to focus and perform her job, relying on her deposition testimony.[38]

Sixth, Defendant contends it is an undisputed fact that, in the Charge of Discrimination Plaintiff filed with the EEOC on August 6, 2020, Plaintiff stated the sex and pregnancy discrimination she alleged occurred while she was working for MBW took place between July 30, 2019 (the earliest of discrimination) and February 17, 2020 (the latest date of discrimination)—a document she signed under oath while represented by counsel.[39] In opposition, Plaintiff does not dispute that she signed her Charge of Discrimination under oath while represented by counsel.[40] Instead, Plaintiff argues, in substance, Defendant is cherry-picking parts of the EEOC Charge and ignoring other of its components, which detail complained-of conduct beginning when she interviewed for a position with MBW and continuing during and after her pregnancy.[41]

Seventh, Defendant contends it is undisputed that the complained of conduct of Normand Pizza[42] is limited to the following: (1) Pizza made comments about all of the changes that Plaintiff's body would undergo, including her breasts getting larger, inquired into her decision to breastfeed, and encouraged her to breastfeed during one conversation in March 2019; (2) Pizza would look Plaintiff up and down when they were in Pizza's office and make comments about how pregnancy would affect the shape and size of her breasts;

---

[37] R. Doc. 89 at ¶ 46 (citing Exhibit A at p. 43).
[38] R. Doc. 102-1 at ¶ 46 (citing Exhibit A at pp. 32, 42-45).
[39] R. Doc. 89 at ¶¶ 50-51 (citing R. Doc. 18-2 at pp. 2, 5, 23; citing Exhibit A at p. 88).
[40] R. Doc. 102-1 at ¶¶ 50-51.
[41] R. Doc. 102-1 at ¶¶ 50-51 (citing Declaration of Jenna Fugarino).
[42] Defendant denies this conduct occurred, but agrees Plaintiff testified that it did.

6

(3) Pizza would make comments about her growing body, and that when her "milk would come in," her breasts would get even larger; (4) Pizza told her she would lose 30 to 50 pounds if she breastfed; (5) once while in Plaintiff's office, Pizza told her she looked beautiful in what she was wearing; (6) once while in the hallway, Pizza made a comment to Plaintiff while she was walking about the shape of her body, asking whether she had purchased maternity clothes and telling her she looked beautiful; and (7) Pizza commented once in the kitchen that he knew she was of Italian heritage because of the shape of her body.[43]

In opposition, Plaintiff admits she testified this conduct occurred, but argues Pizza's conduct was not limited to these instances. Instead,

> Ms. Fugarino testified that throughout her pregnancy she was subjected to repeated comments regarding the size of her breasts, how her breasts were going to grow and had grown with pregnancy, that she would 'enjoy' breastfeeding in a highly sexual manner, her body would 'change' with pregnancy, constant inquiries as to whether and/or how she would breastfeed her child . . . , the shape and curves of her body as a Italian woman and an Italian pregnant woman, that she was 'beautiful' with her growing body, whether/not she should buy maternity clothes and when, lactation commentary, including when and how her 'milk' would come in and that would make her breasts even larger, ogling her breasts and body while commenting on the size of her breasts, cupping hands in front to demonstrate the size of her breasts, that her breasts would only get larger during pregnancy, comments about her wight and that breastfeeding would cause weight loss, comments about her shape, and that the firm 'was not conducive to a mother-baby relationship.' Ms. Fugarino testified these comments by Pizza occurred frequently and 'continuously throughout my pregnancy.' Identifying specific instances of conduct, Ms. Fugarino testified Pizza made sex-based offensive comments in his office, her office, in the hallway, and even in the kitchen in front of others. In opposition to and clearly communicating that the comments were unwanted and offensive, Ms. Fugarino replied 'no,' tried to end the conversation, and left Pizza's office, changed the subject, rolled her eyes, and reported them, to no avail.

---

[43] See R. Doc. 89 at ¶¶ 31-32, 35-37, 40-43.

In support of these contentions, Plaintiff relies on summary judgment evidence, namely her deposition testimony and her declaration dated September 28, 2022.[44]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45] "An issue is material if its resolution could affect the outcome of the action."[46] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[47] All reasonable inferences are drawn in favor of the non-moving party.[48] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[49]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[50] If the

---

[44] In its reply, Defendant argues the Court should ignore Plaintiff's September 28, 2022 declaration because parts of it are inadmissible and inconsistent with prior testimony. R. Doc. 106. First, on summary judgment courts may consider evidence that is inadmissible, unless the inadmissible nature of the evidence cannot be cured at trial. Defendant has not argued Plaintiff will be unable to present admissible evidence at trial to prove her recitation of the complained-of incidents. Second, the discrepancies Defendant identified between Plaintiff's deposition testimony and declaration are either not substantial or not material, or require the Court to weigh the credibility of evidence, which is the role of the jury. Accordingly, the Court finds Defendant's arguments raised in reply meritless.
[45] FED. R. CIV. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[46] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[47] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[48] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[49] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[50] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[51]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, as in this case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[52] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[53] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[54] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose

---

[51] *Celotex*, 477 U.S. at 322–24.
[52] *Id.* at 331–32 (Brennan, J., dissenting).
[53] *See id.* at 332.
[54] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[55]

## LAW AND ANALYSIS

Plaintiff's claims in this action are four-fold: (1) a claim for sex/pregnancy-based discrimination under Title VII and La. R.S. 23:301, *et seq.*; (2) a claim for sex/pregnancy-based harassment under Title VII and La. R.S. 23:301, *et seq.*; (3) a claim for sex/pregnancy-based retaliation under Title VII; and (4) a claim for reprisal under La. R.S. 23:967.[56] At issue now is Plaintiff's claim for sex/pregnancy-based harassment[57] under Title VII and La. R.S. 23:301, which is a claim for hostile work environment.[58] To that end, Defendant seeks summary judgment on Plaintiff's hostile work environment claim and retaliatory hostile work environment claim. The Court addresses both claims separately.

### I. Hostile Work Environment Claim

With respect to Plaintiff's hostile work environment claim, the parties agree Title VII and La. R.S. 23:301 require the same analysis, and that "[c]ourt's (sic) routinely rely on federal jurisprudence when interpreting [La. R.S. 23:301] claims."[59] Accordingly, the Court will analyze Plaintiff's hostile work environment claim under Louisiana law and Title VII together, opting to employ federal law.

---

[55] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[56] R. Doc. 33 (Plaintiff's letter to the Court setting out all causes of action).
[57] Sex/pregnancy-based discrimination under Title VII can take many forms—including, but not limited to, harassment. Said differently, a claim for sex/pregnancy-based harassment is a form of sex/pregnancy-based discrimination. Additionally, sex discrimination includes, but is not limited to, discrimination on the basis of pregnancy or childbirth. *See Young v. UPS*, 575 U.S. 206, 135 S.Ct. 1338, 191 L. Ed. 2d. 279 (2015).
[58] *See Martin v. American Midstream Partner, LP*, 386 F.Supp.2d 733, 740 n.19 (E.D. La. 5/15/2019).
[59] R. Doc. 102 at p. 10 n.58 (Plaintiff's opposition); *see also* R. Doc. 82-1 at pp. 9-10 (Defendant acknowledging "a hostile work environment claim under [La. R.S. 23:301] is governed by the same standard and elements as one brought under Title VII.").

Title VII of the Civil Rights Act of 1964 provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[60] The U.S. Supreme Court has held Title VII "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.'"[61] "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment, Title VII is violated."[62]

Under Title VII, to prevail on a hostile work environment claim, at trial Plaintiff must establish that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was because of her sex; and (4) the harassment affected a term, condition, or privilege of her employment.[63] For purposes of this motion, Defendant casts into doubt Plaintiff's ability to prove elements three and four at trial. On summary judgment, however, Plaintiff need not prove her claim; instead, to prevent the entry of summary judgment, she need only demonstrate the existence of a genuine dispute of material fact as to elements three and four.

First, in terms of the third element of Plaintiff's hostile work environment claim—that the harassment complained of was because of Plaintiff's sex—the harassment complained of "includes sexually inappropriate and unwanted comments about

---

[60] 42 U.S.C. § 2000e—2(a)(1).
[61] *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal quotations omitted).
[62] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).
[63] *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[Plaintiff's] sex and pregnancy."[64] According to Defendant, the following excerpt from Plaintiff's deposition reveals that Plaintiff admits the harassment complained of was not on account of her sex or pregnancy:

> Q. What do you mean by "hostile work environment"?
>
> A. The environment created by the partners, where everyone was on edge constantly, how the partners would speak to you, the demanding work environment that they placed you in. You know, no one felt like they could have any semblance of a life outside of work.
>
> Q. You're talking about male and female associates?
>
> A. Male and female, certainly. [65]

This is the sole argument raised in support of Defendant's contention that Plaintiff cannot prove the third element of her hostile work environment claim. In opposition, Plaintiff argues "Defendant's contention that Ms. Fugarino admitted the harassment was not based on sex is not accurate and should be rejected. Ms. Fugarino testified that her 'hostile work environment' claim was based on the 'offensive' working 'environment' at Milling, which includes the sexually inappropriate and unwanted comments about her sex and pregnancy, threats, removal of work assignments, and termination – about which she testified extensively."[66]

Simply put, the deposition testimony Defendant points to is not the silver bullet MBW contends it is. In substance, Defendant asks the Court to find Plaintiff's hostile work environment claim brought in her Supplemental, Amending, and Restated Petition[67] was

---

[64] R. Doc. 102 at p. 15.
[65] R. Doc. 82-3 at pp. 49-50 (deposition of Plaintiff).
[66] R. Doc. 102 at p. 15.
[67] In Plaintiff's Supplemental, Amending, and Restated Petition, Plaintiff made allegations supporting a hostile work environment on the basis of her sex or pregnancy. *See, e.g.*, R. Doc. 18 (describing "[r]epeated derogatory and threatening remarks by Pizza, Managing Partner, about Petitioner's breasts, including their size, how large they were, how they would get larger during her pregnancy, and that she should breastfeed her baby) (further describing the "[n]umerous comments about Petitioner's pregnancy by Pizza to Petitioner, including that her body would go through 'changes' and that she should expect to lose thirty (30)

abandoned by the testimony Plaintiff gave at her deposition; namely, that what she truly complains was a hostile work environment was merely a "demanding work environment" imposed on associates regardless of their sex. A work environment may be both "demanding," as Plaintiff described it during her deposition, and riddled with discrimination on the basis of sex or pregnancy, meaning the two are not mutually exclusive. Accordingly, the Court finds no merit in Defendant's argument, and moves to analyze Defendant's second argument in support of summary judgment on Plaintiff's hostile work environment claim.

Second, in terms of the fourth element of a hostile work environment claim—that the harassment affected a term, condition, or privilege of her employment—it is said that "[s]exual harassment affects a term, condition, or privilege of employment when it is '*severe or pervasive*.'"[68] Defendant argues Plaintiff is unable to prove the sexual harassment she was subject to meets the "severe or pervasive" threshold. At trial, Plaintiff must show the environment was "both objectively and subjectively offensive, [meaning] one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[69] To determine whether an environment is sufficiently hostile or abusive, the fact-finder must look at the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

---

to fifty (50) pounds after birth because of breastfeeding . . . ; the posting of posters in Petitioner's office regarding her pregnancy and comments about what could/would happen to Petitioner's vagina . . . .").
[68] *Russell*, 234 F. App'x at 205 (emphasis added) (quoting *La Day*, 302 F.3d at 482). The Fifth Circuit has recognized that "[h]arassment need not be severe *and* pervasive to impose liability; one or the other will do." *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 435 (internal quotations omitted).
[69] *La Day*, 302 F.3d at 482 (internal quotation marks omitted) (quoting *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998)).

13

interferes with an employee's work performance."[70] When genuine disputes of material fact exist as to the totality of the circumstances, the issue is "best left for the triers of fact to determine after all testimony has been heard and all evidence presented."[71] Indeed, the Supreme Court instructs that a "reasonable person" standard should be employed to determine whether conduct is severe or pervasive, considering "all the circumstances."[72] Further, the Supreme Court has recognized "[t]he real social impact of workplace behavior depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used . . . . Common sense, and an appropriate sensitivity to social context" are key factors to consider.[73]

Defendant accepts as true for purposes of the instant motion that Plaintiff found Defendant's conduct to be subjectively offensive.[74] To prevent summary judgment, Plaintiff must create a genuine dispute of material fact as to whether the complained-of conduct was also objectively offensive. To that end, Plaintiff has provided evidence of, among other things, what she contends is harassment on the basis of her sex that a reasonable juror will conclude is severe and pervasive, thereby affecting a term, condition, or privilege of her employment:[75]

- In late 2018, Plaintiff applied and interviewed for a position as an associate attorney at Defendant's Mandeville, Louisiana office location, during which time she was told by Normand Pizza, the managing partner of MBW, that it would be "best" if she held off starting a family.

---

[70] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). *See also Calmes*, 943 F. Supp. 2d at 680.
[71] *Wilson v. Laitram Corp.*, 131 F.Supp.2d 826, 835 (E.D. La. 2001).
[72] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).
[73] *Id.* at 81-82.
[74] R. Doc. 82-1 at p. 22.
[75] Plaintiff acknowledges she need only prove the complained of harassment is severe *or* pervasive. Plaintiff contends, however, a reasonable jury would find the harassment was severe and pervasive.

- Plaintiff was then hired by Defendant, and, a few months into her employment, Plaintiff advised Defendant she was pregnant. Thereafter, and frequently either throughout her pregnancy, after her pregnancy, or both, lawyers at MBW commented on, *inter alia,* the size of Plaintiff's breasts; how her breasts were going to grow and had grown with her pregnancy; that Plaintiff would "enjoy" breastfeeding in a highly sexual manner; how her body would "change" with pregnancy; inquiries into whether and/or how she would breastfeed; the shape and "curves of her body" as an Italian woman and an Italian pregnant woman; that she was "beautiful" with her growing body; whether or not she would buy maternity clothes and when; how she would only receive paid maternity leave for two (2) weeks because she was not as valuable as other male associates at MBW; how she should breastfeed to lose weight and connect with the baby; how the firm was not conducive to a "mother-baby relationship;" how women should stay home with their children; how the legal profession was not conducive to working mothers; how Plaintiff should find a career not as demanding as the practice of law because she wanted to be a mother.

- Plaintiff testified these comments were made in Normand Pizza's office, in Plaintiff's office, in the hallway, and in the office kitchen—all in front of others.

- Plaintiff testified the conduct she was subjected to negatively affected her emotions and her ability to focus and perform her job—particularly because she was concerned the comments would escalate into touching.[76]

Defendant makes a spattering of arguments in support of entering summary judgment on the fourth element of Plaintiff's hostile work environment claim. First, Defendant's argues "[t]he fact that Fugarino cannot say how many times" she was subject to the complained-of conduct "weighs heavily in favor of a finding of no hostile work environment."[77] This argument is without merit. The Fifth Circuit has stated unequivocally that "[t]o require [the Plaintiff] to provide precise dates for the occurrences

---

[76] Defendant argues the Court should enter summary judgment because it is undisputed that Plaintiff was not touched by lawyers at MBW. Touching is not a requirement to prevail on a hostile work environment claim, though. *See Acosta v. Boudreaux & Thibodeau's Cajun Cookin' Inc.*, CA 16-14897 (E.D. La. 8/17/2017).

[77] R. Doc. 82-1 at p. 22. Further, to the extent Defendant argues Plaintiff's EEOC Charge of Discrimination is inconsistent with her deposition testimony, even assuming that argument is correct, with Plaintiff contests, the Court cannot weigh the credibility of evidence at the summary judgment stage. *See id.* at pp. 23-24. Thus, the argument is irrelevant to a determination of the appropriateness of summary judgment.

15

or provide an exact number of occurrences to support her allegations is an onerous burden *not required by law*. Whether [Plaintiff's] allegations are too vague to ultimately carry the day is a credibility determination, or requires weighing the evidence, both of which are more appropriately done by the trier of fact."[78]

Second, Defendant argues "none of the comments Fugarino claims were made . . . involves references to sex (or sexually explicit language)."[79] This, however, is far from an undisputed fact that would warrant summary judgment. For example, in opposition to summary judgment, Plaintiff provided evidence that partners at the form told her, *inter alia,* she would "enjoy" breastfeeding in a highly sexual manner, told her that her breasts were going to grow and had grown with her pregnancy, and that women should stay home with their children and find careers less demanding than the practice of law.[80] These "comments Fugarino claims were made . . . involve[] references to sex ([and] sexually explicit language)."[81] As a result, the Court finds Defendant's argument meritless.

Third, Defendant argues "Fugarino acknowledges the comments which (sic) comprise her claim did not impact her work product" a factor that "heavily support a finding of no hostile work environment."[82] In support of that argument, Defendant points to one statement Plaintiff made during her deposition; namely, that Plaintiff said she "[doesn't] know if [her] work product necessarily suffered" as a result of the conduct she complains of. However, a review of the context of Plaintiff's statement reveals the following:

Q. How did it affect your ability to do your job, these comments?

---

[78] *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428 (2005) (emphasis added).
[79] R. Doc. 82-1 at p. 22.
[80] *See, e.g.*, R. Doc. 102-1 at p. 13; *see also, e.g.*, R. Doc. 102-2 at pp. 13-14.
[81] R. Doc. 82-1 at p. 22.
[82] R. Doc. 82-1 at p. 24.

> A. Well, I was certainly rattled anytime I was approached by him, in fear of it could lead to something more, like being touched.
>
> . . .
>
> Q. How did it affect your ability to do your work for Ms. Eldridge?
>
> A. You know, when you're put into an environment like that, where you feel unsettled constantly, not knowing what's coming around the corner or what next comment might be made to you, you certainly don't feel comfortable in just being there and focusing on your work. Because you're worried at any time someone else can make a comment to you. He could make a comment to me or come in my office and continue with offensive comments about my body.
>
> Q. So are you telling me your work product suffered as a result of these comments?
>
> A. I don't know if my work product necessarily suffered, but I believe that the distress that it caused while being there, and just the nervous wreck of constantly being on edge, didn't allow me to fully focus on my work being done.[83]

In assessing the merits of a hostile work environment claim, Fifth Circuit precedent instructs courts to consider whether the complained-of conduct "unreasonably interferes with an employee's work performance,"[84] which, obviously is broader than, and captures, an employee's "work product." In light of Plaintiff's testimony that the complained-of conduct caused her to be a "nervous wreck . . . constantly . . . on edge, [which] didn't allow [her] to fully focus on [her] work being done,"[85] the Court finds Plaintiff has created a genuine dispute of material fact as to whether the complained-of conduct unreasonably interfered with her work performance. Accordingly, there is no basis for Defendant's argument that "Fugarino acknowledge[ing] the comments which (sic) comprise her claim did not impact her work product."[86]

Fourth, Defendant argues "[a]t most, the comments Fugarino alleges amount to compliments on her appearance and discussions of breastfeeding (and related comments

---

[83] R. Doc. 102-3 at pp. 18-20.
[84] *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)).
[85] R. Doc. 102-3 at pp. 19-20.
[86] R. Doc. 82-1 at p. 24.

17

about her breasts)," which are "largely innocuous."[87] Plaintiff has put forward evidence, as relayed above, of what she contends a reasonable jury will conclude is severe and pervasive harassment against her on the basis of her sex or pregnancy. Resolving all factual disputes in favor of the non-moving party, the Court finds that Plaintiff has made enough of a showing of a hostile work environment to defeat summary judgment in Defendant's favor.

Whether a reasonable person would find the conduct Plaintiff was subjected to severe or pervasive is a fact-based inquiry. Based on the evidence presented by Plaintiff, viewing the evidence in the light most favorable to the non-moving party, a reasonable juror could reach such a conclusion. Plaintiff has carried her burden of establishing that a genuine dispute of material fact exists precluding the entry of summary judgment on her hostile work environment claim under Title VII and Louisiana law.

## I.  Retaliatory Hostile Work Environment Claim

Finally, "to the extent Fugarino asserts a hostile work environment claim based on 'retaliation,'" Defendant moves the Court to enter summary judgment on that claim because the Fifth Circuit does not recognize that cause of action.[88] Plaintiff does not oppose this argument raised by Defendant in its motion for partial summary judgment.[89] Because, even viewing the evidence in the light most favorable to the non-moving party, as a matter of law, the Court finds a cause of action for retaliatory hostile work environment is not recognized by the Fifth Circuit, the Court finds summary judgment on this claim is appropriate.[90]

---

[87] R. Doc. 82-1 at p. 22.
[88] R. Doc. 82-1 at p. 24.
[89] *See generally* R. Doc. 102.
[90] *Carpenter v. Haaland*, 2021 WL 119826 at *11 n.139 (E.D. La. 5/30/21) (J., Morgan) (collecting cases).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for partial summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** in Defendant's favor on Plaintiff's "retaliatory hostile work environment" claim. Summary judgment is **DENIED** on Plaintiff's hostile work environment claim under Title VII and Louisiana law.

**New Orleans, Louisiana, this 11th day of October, 2022.**

                                                  **SUSIE MORGAN**
                                 **UNITED STATES DISTRICT JUDGE**