### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JENNA FUGARINO,** | **CIVIL ACTION** |
| **Plaintiff** | |
| | |
| **VERSUS** | **NO.  21-594** |
| | |
| **MILLING, BENSON,** | **SECTION: "E" (1)** |
| **WOODWARD LLP,** | |
| **Defendant** | |

### ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by Milling, Benson, Woodward LLP ("Defendant" or "MBW").[1] The motion is opposed.[2] For the reasons that follow, the motion for partial summary judgment is **DENIED**.

### PROCEDURAL BACKGROUND

The facts and procedural background of this case are extensively set forth in the Court's October 11, 2022 Order and Reasons.[3] In the instant motion, Defendant seeks summary judgment on Plaintiff's retaliation claim under Title VII and whistleblower reprisal claim under La. R.S. 23:967.[4] Plaintiff opposes the summary judgment, arguing genuine disputes of material fact exist.[5] Defendant filed a reply.[6]

### FACTUAL BACKGROUND

### I.    Undisputed Facts

The following facts are not in dispute. Normand Pizza was the managing partner of MBW's Mandeville office and a member of MBW's management committee.[7] Normand

---

[1] R. Doc. 93.
[2] R. Doc. 102.
[3] R. Doc. 108.
[4] R. Doc. 93.
[5] R. Doc. 102.
[6] R. Doc. 106.
[7] R. Doc. 93-2 at ¶ 2; *see also* R. Doc. 102-2 at ¶ 2 (admitting that Pizza was the managing partner, and admitting that Pizza was a, but not the only, member of the management committee).

Pizza is a father and a grandfather.[8] Plaintiff reported Normand Pizza's comments to Shannon Eldridge in March 2019.[9] Around October 4, 2019, Plaintiff reported Normand Pizza's comments to Andrew Capitelli, Tina Martin, and Michaela Boudreaux.[10] Kathleen Flynn, a receptionist at MBW, posted inspirational quotes and birth affirmations in Fugarino's office, and commented on "what would happen to her vagina" after childbirth.[11] Plaintiff's last day of work at MBW before her maternity leave was either October 3, 2019, or October 4, 2019.[12] Plaintiff gave birth to her child on October 8, 2019.[13] Pizza wrote an email to Plaintiff on November 6, 2019.[14] Plaintiff construed Pizza's email as threatening, offensive, and demeaning.[15] Fugarino responded to Pizza's email the following day.[16] Fugarino sought other employment while she was on maternity leave.[17] Following her maternity leave, Fugarino requested a modified work schedule by emailing Pizza; Normand Pizza responded to the email stating he would "ask the Management Committee to address" her request; on February 12, 2020, the MBW management committee met and rejected Plaintiff's request for a modified work schedule.[18] Pizza and Chadwick Collings met after the management committee meeting to discuss Fugarino's employment.[19] On February 17, 2020, in a meeting with Pizza and Chadwick Collings, Plaintiff was terminated by MBW.[20]

---

[8] R. Doc. 93-2 at ¶ 4; *see also* R. Doc. 102-2 at ¶ 4 (not disputing Pizza's status as a father and grandfather).
[9] R. Doc. 93-2 at ¶ 8; *see also* R. Doc. 102-2 at ¶ 8.
[10] R. Doc. 93-2 at ¶ 9; *see also* R. Doc. 102-2 at ¶ 9.
[11] R. Doc. 93-2 at ¶ 11; *see also* R. Doc. 102-2 at ¶ 11.
[12] R. Doc. 93-2 at ¶ 16; *see also* R. Doc. 102-2 at ¶ 16.
[13] R. Doc. 93-2 at ¶ 17; *see also* R. Doc. 102-2 at ¶ 17.
[14] R. Doc. 93-2 at ¶ 18; *see also* R. Doc. 102-2 at ¶ 18.
[15] R. Doc. 93-2 at ¶ 21; *see also* R. Doc. 102-2 at ¶ 21.
[16] R. Doc. 93-2 at ¶ 22; *see also* R. Doc. 102-2 at ¶ 22.
[17] R. Doc. 93-2 at ¶ 23; *see also* R. Doc. 102-2 at ¶ 23.
[18] R. Doc. 93-2 at ¶ 30; *see also* R. Doc. 102-2 at ¶ 30.
[19] R. Doc. 93-2 at ¶ 32; *see also* R. Doc. 102-2 at ¶ 32.
[20] R. Doc. 93-2 at ¶ 51; *see also* R. Doc. 102-2 at ¶ 51. Beyond these undisputed facts, the parties sometimes agree (and sometimes disagree) as to the other party's correct quotation of deposition testimony, but

## II.   Disputed Facts[21]

Plaintiff argues Defendant's motion for partial summary judgment should be denied because disputed issues of material fact exist.

First, the parties dispute whether Pizza's comments were offensive to Plaintiff. Defendant contends it is an undisputed fact that Plaintiff did not tell Pizza his comments were offensive to her, relying on Plaintiff's deposition testimony.[22] In opposition, Plaintiff points to additional deposition testimony in which she testified she clearly communicated to Pizza that his sex-based comments were unwanted and offensive, replied "no" directly to him, tried to end the conversation, left his office, changed the subject, rolled her eyes, and reported his comments to other employees of the firm.[23]

Second, the parties dispute whether Normand Pizza's November 6, 2019 email to Plaintiff was the first time Plaintiff was informed of a 165-hour billing requirement and on whom the billing requirement was imposed. Defendant contends it is an undisputed fact that Pizza's email reiterated MBW's "expectations" for when she returned from maternity leave, including that she would not be allowed to work on a part-time basis as she had proposed to do, and, instead, she should return to work when she was able to work on a full-time basis, meaning billing 165 hours per month.[24] In opposition, Plaintiff points to her testimony that, before Pizza's November email, she had not been informed of a 165 billable hours requirement, and Plaintiff points to her testimony that no such

---

disagree as to the underlying facts. In reality, then, the underlying facts are in dispute. Accordingly, the Court will not include these statements here as undisputed.

[21] In its reply, MBW argues the Court should construe anything Plaintiff denies without a specific citation to a page, even though there is a citation to a document in the record, as admitted. R. Doc. 107 at p. 9. While the Court takes note of the suggestion, whether to do so is entirely within this Court's discretion. *See* FED. R. CIV. PRO. 56(e)(1)-(4); *see also* FED. CIV. PRO. 56(c)(3) ("The court . . . may consider other materials in the record" that are not cited to by the parties.).

[22] R. Doc. 93-2 at ¶ 7.

[23] R. Doc. 102-2 at ¶ 7.

[24] R. Doc. 93-2 at ¶ 19.

"requirement" was enforced or cognizable for any other non-pregnant associate in the years before, during, and after Plaintiff's employment.[25]

Third, the parties dispute whether Plaintiff's proposed modified work schedule post-maternity leave amounted to a reduced work schedule or instead to a hybrid work schedule, whether this was Plaintiff's second-request for a part-time work schedule, and the cause of Plaintiff's request. Defendant contends it is an undisputed fact that: (1) Plaintiff emailed Pizza on February 7, 2020, asking if MBW would allow her to work four days per week with a 20% reduction in salary;[26] (2) this was Plaintiff's second request for a part-time work schedule after already being told "no" once before;[27] and (3) Fugarino's request for a four-day work week had nothing to do with her pregnancy, childbirth, or a medical condition.[28] Conversely, Plaintiff provides summary judgment evidence that: (1) Plaintiff's email to Pizza on February 7, 2020, asking if MBW would allow her to work 4 days in-person and 1 day out of the office from home, was sent with the encouragement of Andrew Capitelli, and was not a request for a part-time schedule, but instead was a request for a flexible work schedule;[29] (2) partners at MBW, like Andrew Capitelli, knew Plaintiff had not requested a part-time work schedule;[30] and (3) Plaintiff's request for a hybrid work schedule was due to the birth of her child.[31]

---

[25] R. Doc. 102-2 at ¶ 19.

[26] R. Doc. 93-2 at ¶ 25.

[27] R. Doc. 93-2 at ¶ 26.

[28] R. Doc. 93-2 at ¶ 27.

[29] R. Doc. 102-2 at ¶ 25.

[30] R. Doc. 102-2 at ¶ 26. A recording of Andrew Capitelli, which the Court reviewed, reveals he knew Plaintiff did not request a part-time work schedule, and that he relayed that to other partners at MBW. Instead, Mr. Capitelli indicated partners at MBW were concerned Plaintiff's request for a modified work schedule was "moving towards" a part-time work schedule, but that he understood this was not the case, and that he found other partners' responses "frustrating." Mr. Capitelli further acknowledged many of the partners at MBW are "old guys," which might explain their lack receptiveness to a flexible work schedule for working mothers because "they don't get it."

[31] R. Doc. 102-2 at ¶ 27.

Fourth, the parties dispute the scope of the management committee's discussion of Plaintiff's request for a modified work schedule. Defendant contends it is an undisputed fact that, during the management committee meeting on February 12, 2020, members discussed Fugarino's prior poor job performance and the possibility of her termination.[32] In opposition, Fugarino presents as evidence the minutes taken during the February 12, 2020 management committee meeting, in which only the following is noted: "Jenna Fugarino's proposal of one-day flexible schedule rejected. Normand will let her know that she may return to work full-time."[33]

Fifth, the parties dispute the reasons for Plaintiff's termination. Defendant contends it is an undisputed fact that the reasons for her termination boiled down to, broadly speaking, Plaintiff's job performance and request for part-time status.[34] Conversely, Plaintiff has provided summary judgment evidence that Plaintiff was never reprimanded for poor work performance,[35] Fugarino completed all work assigned to her,[36] partners at the firm offered to give her positive letters of recommendation,[37] Andrew Capitelli in a recording touted Plaintiff's work performance,[38] and stated that Fugarino did not request a part-time work schedule post-maternity leave, and the partners knew this.[39]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[32] R. Doc. 93-2 at ¶ 31.
[33] R. Doc. 102-2 at ¶ 31.
[34] R. Doc. 93-2 at ¶¶ 33-51.
[35] R. Doc. 102-2 at ¶ 35.
[36] R. Doc. 102-2 at ¶ 36.
[37] R. Doc. 102-2 at ¶ 37.
[38] R. Doc. 102-2 at ¶ 37.
[39] R. Doc. 102-2 at ¶¶ 46, 48.

of law."[40] "An issue is material if its resolution could affect the outcome of the action."[41] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[42] All reasonable inferences are drawn in favor of the non-moving party.[43] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[44]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[45] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[46]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, as in this case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record

---

[40] FED. R. CIV. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[41] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[42] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[43] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[44] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[45] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[46] *Celotex*, 477 U.S. at 322–24.

to establish an essential element of the non-movant's claim.[47] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[48] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[49] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[50]

## <u>LAW AND ANALYSIS</u>

Plaintiff's claims in this action are four-fold: (1) a claim for sex/pregnancy-based discrimination under Title VII and La. R.S. 23:301, *et seq.*; (2) a claim for sex/pregnancy-based harassment under Title VII and La. R.S. 23:301, *et seq.*; (3) a claim for sex/pregnancy-based retaliation under Title VII; and (4) a claim for reprisal under La. R.S. 23:967.[51] Defendant seeks summary judgment on Plaintiff's retaliation claim and reprisal claim.[52] The Court addresses both claims separately.

---

[47] *Id.* at 331–32 (Brennan, J., dissenting).

[48] *See id.* at 332.

[49] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[50] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[51] R. Doc. 33 (Plaintiff's letter to the Court setting out all causes of action). To the extent Plaintiff brought a claim for a retaliatory hostile work environment, the Court granted Defendant's motion for summary judgment because the Fifth Circuit does not recognize that cause of action. R. Doc. 108.

[52] R. Doc. 93.

## I.     Retaliation Claim

A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination under Title VII.[53] "Direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption."[54] If a plaintiff presents direct evidence, the *McDonnell Douglas* test does not apply.[55] More often, a plaintiff relies on circumstantial evidence, which requires the court to apply the *Mcdonnell Douglas* burden-shifting analysis.[56] Under the *McDonnell Douglas* test, the plaintiff must first demonstrate a prima facie case of discrimination.[57] If successful, the burden of production shifts to the defendant to show a legitimate and nondiscriminatory basis for the adverse employment decisions.[58] Finally, the plaintiff must then show the defendant's proffered reason is pretextual or unworthy of belief.[59]

In this case, both parties apply the *McDonnell Douglas* burden shifting analysis. Accordingly, for the purpose of resolving the instant motion, the Court assumes this is a circumstantial evidence case. The Court will now consider Defendant's arguments that Plaintiff cannot make a prima facie showing of retaliation, and, if she has made such a showing, the Defendant has articulated a legitimate, nondiscriminatory reason for her dismissal, and Plaintiff has not shown the reason was pretextual.

### A.     Prima Facie Showing of Retaliation

Title VII prohibits an employer from taking adverse employment action against an employee because she engages in a protected activity.[60] As a result, to establish a prima

---

[53] *U.S. Postal Service Bd. Of Governors v. Aikens*, 460 U.S. 711, 714 n. 3 (1983).
[54] *Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (1993).
[55] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)
[56] *Smith v. Touro Infirmary,* 2015 WL 5093487 at *2 (E.D. La. Aug. 28, 2015) (applying *McDonnell Douglas* analysis to determine motion for summary judgment).
[57] *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5t h Cir. 1994) (applying *McDonnell Douglas* test).
[58] *Id.*
[59] *Id.*
[60] *Joseph v. Phillips*, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014).

facie case of retaliation a plaintiff must show that: (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action.[61]

If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.[62] If the employer does so, the burden shifts back to the plaintiff to prove the employer's given reasons are a pretext for retaliation.[63] To avoid summary judgment, a plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.[64]

In this case, of the three elements required to establish a prima facie retaliation claim,[65] Defendant's motion for partial summary judgment casts into doubt only Plaintiff's ability to prove the third element: that a causal connection exists between the protected activity and the adverse employment action.[66] Specifically, Defendant accepts as true that Plaintiff engaged in protected activity by complaining of Normand Pizza's harassing comments to Shannon Eldridge in March 2019 and to Capitelli, Martin, and Boudreaux around October 4, 2019.[67] Defendant further accepts as true that Plaintiff suffered an adverse employment action when she was terminated on February 17, 2020.[68]

---

[61] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).

[62] *Id.* (quoting *LeMaire v. Louisian*a, 480 F.3d 383, 388-89 (5th Cir. 2007)).

[63] *Id.*

[64] *Hague v. Univ. of Tex. Health Sci. Ctr. At San Antonio*, 560 Fed. Appx. 328, 333 (5th Cir. 2014) (citing *Long v. Eastfield Coll.,* 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted))

[65] On summary judgment, Plaintiff need only create a genuine dispute of material fact that (1) she engaged in protected activity; (2) she suffered adverse employment action; and (3) causation exists between the two.

[66] *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)).

[67] R. Doc. 93-1 at pp. 16-17.

[68] *Id.* at p. 17 ("Fugarino satisfied the second element because she was terminated, which is an adverse employment action.").

In support of its motion, Defendant makes two arguments. First, Defendant argues "Fugarino cannot rely upon 'very close' timing or temporal proximity between her alleged reports of harassment by Pizza and her termination" to establish the prima facie element of causation.[69] A causal link between the adverse employment action and the protected activity can be satisfied "simply by showing close enough timing between [the] protected activity and [the] adverse employment action."[70] *University of Texas Southwestern Medical Center v. Nassar*'s heightened but-for causation requirement applies only in the pretext stage of the *McDonnell Douglas* analysis and is not a required element of a prima facie case.[71] "At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."[72] Under Defendant's iteration of the facts, an approximate four month gap in time exists between the protected activity and adverse employment action— a gap that Defendant argues forecloses Plaintiff's ability to rely on temporal proximity to establish causation at the prima facie stage.[73] In opposition, Plaintiff points out that the four-month gap in time between her protected activity and adverse employment action is almost entirely attributable to her maternity leave.[74] Plaintiff began her maternity leave on October 4, 2019 and returned to work on February 3, 2020.[75] Two weeks later, she was terminated.[76]

---

[69] *Id.*
[70] *Abbood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459 (5th Cir. 2019) (citing *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019)).
[71] *Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).
[72] *Id.*
[73] *Id.*
[74] R. Doc. 102 at p. 21. Further, Plaintiff argues the protected activity she engaged in is not limited to the instances uncontested by Defendant, nor are the instances of adverse employment action limited to her termination. *Id.* at pp. 19-20. The Court need not delve into those issues because, as explained below, Plaintiff may rely upon temporal proximity even by way of Defendant's framing of the facts.
[75] *Id.*
[76] R. Doc. 93-1 at p. 9 ("Pizza and Collings met with Fugarino on February 17, 2020, to terminate her.").

Even accepting Defendant's recitation of the facts as true, Plaintiff may rely upon temporal proximity between the protected activity and adverse employment action to establish a causal link at the prima facie stage. There exists no hard-and-fast rule to determine how much of a gap in time between the protected activity and adverse employment action is too much time. The Fifth Circuit has held a period of four months between the protected activity and the adverse employment action may be enough to enable a reasonable jury to infer causation.[77] In a different case, the Fifth Circuit held two and one-half months, *standing alone*, is not within the very close proximity that is necessary to establish causation.[78] These differing outcomes reveal the fact-intensive nature of the inquiry involved in determining whether a plaintiff may rely upon temporal proximity to establish prima facie causation. Accordingly, the Court finds that a reasonable jury, on account of close proximity, could infer causation between Plaintiff's protected activity of complaining to partners at MBW about Normand Pizza and her termination because the gap in time (about four months) between the two is almost entirely attributable to Plaintiff's maternity leave—a period during which Plaintiff was not even present in the workplace.

Second, MBW argues "Fugarino also cannot establish the causation element of her retaliation claim because she has no evidence to establish that the decision makers for her termination, Pizza and Collings, ever knew of her alleged protected activity."[79] Generally speaking, "[t]o demonstrate the third element of a prima facie case of retaliation—a causal connection between the protected activity and the adverse action—a plaintiff must demonstrate that the employer's decision 'was based in part on knowledge of the

---

[77] *Feist v. La. Dept. of Justice*, 730 F.3d 450, 454-55 (5th Cir. 2013).
[78] *Hill v. Brown*, 2022 WL 3094329, at *12 (W.D. La. 7/19/2022) (citing *Besser v. Texas Gen. Land Office*, 834 Fed. App'x. 876, 885 (5th Cir. 2020)).
[79] R. Doc. 93-1 at p. 18.

employee's protected activity.'"[80] Defendant argues Pizza and Collings are the only decision makers, and that Plaintiff has no evidence that either one of them had knowledge of her protected activity. However, Chadwick Collings testified that hiring and firing decisions at MBW are done through a consensus of all other partners in the office.[81] Colling's testimony reveals all partners in the Mandeville office of MBW are relevant decision makers. Defendant does not dispute that Plaintiff reported Normand Pizza's harassing comments to Shannon Eldridge and Andrew Capitelli, partners in the Mandeville office.[82] Accordingly, and viewing the evidence in the light most favorable to the non-moving party, Plaintiff has presented a prima facie case of retaliation.[83]

### B.    Burden Shifts to Defendant to Proffer Reasons for the Adverse Employment Action

When a plaintiff establishes a prima facie claim of retaliation, the burden shifts to the employer. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[84] The defendant must articulate a legitimate, nondiscriminatory,  or nonretaliatory reason for its employment action.[85] In this case, Defendant articulates Plaintiff's termination was based on two factors. First, Plaintiff's

---

[80] *Lyons v. Katy Independent School Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (internal quotation omitted)).

[81] *See* R. Doc. 93-5 a p. 27 (page 105 of Chadwick Collings deposition testimony). The Court emailed all counsel on October 12, 2022, requesting a complete copy of the deposition transcripts of Normand Pizza and Chadwick Collings. Page 106 of the deposition transcript of Chadwick Collings was not provided by either party in their filings. The deposition testimony of Chadwick Collings on page 106 of the transcript, which was subsequently provided to the Court, reveals that hiring and firing decisions at MBW were done through a consensus of all partners in the office. A copy of page 106 is attached.

[82] R. Doc. 93-1 at p. 17.

[83] Defendant additionally argues summary judgment should be granted for a separate reason. MBW relies on non-binding caselaw for the proposition that "intervening events may erode the causal link between" the protected activity and an adverse employment action, contending Plaintiff's "second request" for "part-time" status (after already being told "no" the first time) constitutes an intervening event. R. Doc. 93-1 at p. 19. First, the Fifth Circuit has not adopted this rule. Second, even if it had, the Court finds the "intervening event" Defendant raises does not, in and of itself, break the causal link between Plaintiff's protected activity and the adverse employment action.

[84] *McCoy v. Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

[85] *Id.*

work performance was poor.[86] And, second, Plaintiff requested part-time work status post-maternity leave after being told "no" to a similar request made before.[87] Defendant has articulated neutral reasons for employment actions taken against Plaintiff and, accordingly, has met its burden of production.

### C.    Burden Shifts to Plaintiff to Demonstrate Defendant's Reasons for the Adverse Employment Action are Pretext for Retaliation

"[O]nce the employer offers a legitimate, nondiscriminatory reason … the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."[88] Plaintiff "must show a conflict in substantial evidence" on the question of whether Defendant would not have terminated her employment "but for" the protected activity.[89] In *Wallace v. Seton Family Hospitals*, the Fifth Circuit held an employer's shifting explanations for firing plaintiff, the suspicious temporal proximity between plaintiff's protected activity and termination, as well as evidence of disparate treatment among employees, was sufficient evidence of pretext.[90]

In this case, Defendant argues Plaintiff has no evidence of pretext, so there can exist no genuine dispute of material fact for the jury to resolve. First, in regard to Plaintiff's work performance, Defendant asserts "every partner at Milling reached the same conclusion: [Plaintiff's] work performance was less than stellar and she did not demonstrate a good work ethic."[91] However, Plaintiff points to summary judgment evidence that partners at the firm thought she was performing well and offered to write

---

[86] R. Doc. 93-1 at p. 19.
[87] *Id.*
[88] *McCoy v. Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).
[89] *Abbood v. Texas Health and Human Services Comm.*, 783 Fed. Appx. 459, 463 (5th Cir. 2019) (citing *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotations omitted)).
[90] *Wallace v. Seton Family of Hosps.*, 777 F. Appx. 83, 93 (5th Cir. 2019).
[91] R. Doc. 93-1 at p. 19 (relying on deposition testimony).

her letters of recommendation for future employment.[92] Second, Defendant argues Plaintiff made "two back-to-back requests to work less than full time, despite being told she would be required to work full-time when she returned from maternity leave. . . . [and the firm] decided to 'cut bait' and terminate Fugarino."[93] Contrarily, Plaintiff has put forth summary judgment evidence that partners at the firm knew Plaintiff had not requested a part-time work schedule but instead had requested a flexible work schedule.[94]

With respect to the two reasons stated by Defendant for terminating Plaintiff, Plaintiff has shown there is a conflict in substantial evidence. The jury must weigh the credibility of the evidence presented by Plaintiff and by MBW to resolve the factual disputes relating to whether the reasons given for her termination were pretextual. If Plaintiff's position is proven, a reasonably jury could infer retaliation was the real motive for Plaintiff's termination. Accordingly, Defendant's motion for summary judgment must be denied on Plaintiff's claim of retaliation under Title VII.

## II.    La. R.S. 23:967 Reprisal Claim

At trial, to prevail on her reprisal claim under La. R.S. 23:967, also known as Louisiana's Whistleblower Statute, Plaintiff must prove (1) that MBW "violated the law through a prohibited workplace act or practice"; (2) Plaintiff advised the employer of the violation; (3) Plaintiff then "refused to participate in the prohibited practice or threatened to disclose the practice"; and (4) Plaintiff "was fired as a result of [her] refusal to participate in the unlawful practice or threat to disclose the practice."[95] Plaintiff must prove that she did those four things in that order. The statute itself lists three protected

---

[92] R. Doc. 102 at p. 23 (referencing a recording of Andrew Capitelli, which the Court has reviewed).
[93] R. Doc. 93-1 at pp. 19-20 (relying on deposition testimony).
[94] R. Doc. 102 at p. 23 (referencing a recording of Andrew Capitelli, which the Court has reviewed).
[95] *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 30G (5th Cir.2015) (describing the elements of the statute in evaluating a dismissal under Rule 12(b)(6)).

disclosure activities for which the employee is protected: (1) providing information to any public body conducting an investigation, hearing, or inquiry into any violation of law; (2) testifying before any public body conducting an investigation, hearing, or inquiry into any violation of law; and (3) objecting to, or refusing to participate in, an employment act or practice that violates the law.[96]

Defendant argues Plaintiff's "whistleblower reprisal claim . . . must be dismissed for the same reasons as her retaliation claims."[97] Because the Court has determined the arguments raised by Defendant in support of its motion for partial summary judgment on Plaintiff's retaliation claim under Title VII are without merit, only two arguments raised by Defendant in support of summary judgment on Plaintiff's reprisal claim remain.

First, MBW argues summary judgment must be entered because "Fugarino did not testify . . . that she specifically informed [Eldridge] that Pizza violated state law" (the second element of a reprisal claim).[98] Defendant does not dispute, however, that Plaintiff reported Pizza's harassing comments in March 2019 to Eldridge.[99] Eldridge is a partner at a Louisiana law firm and, presumably, is familiar with Louisiana law. A jury may reasonably conclude those acts of reporting put MBW on notice of violations of Louisiana law.[100] Accordingly, Plaintiff has created a genuine dispute of material fact as to whether she advised MBW of violations of state law—the second element of her reprisal claim.

Second, Defendant argues "[e]ven assuming that [Eldridge] could have known that Fugarino was reporting a violation of state law [when she told her of Pizza's harassing

---

[96] La. R.S. 23:967(A)(2)-(A)(3); *cf. Accardo v. La. Health Servs. & Indent. Co* ., 2005–2377, p. 7 (La.App. 1 Cir. 6/21/06), 943 So.2d 381, 385 (interpreting the language of the statute to conclude that the plaintiff's "good faith" in reporting an employer violation of the law and advising the employer of the actual violation of the law are required "before the employee undertakes one of the three protected disclosure activities.").
[97] R Doc. 93-1 at p. 20. Those reasons relate to causation.
[98] *Id.* at p. 21.
[99] R. Doc. 93-1 at p. 17.
[100] *See Fondren v. Greater New Orleans Expressway Com'n.*, 871 So.2d 688 (La. App. 5th Cir. 2004).

comments],"[101] "Fugarino cannot prove she engaged in disclosure activities before her termination" (the third element of a reprisal claim).[102] However, objecting to an employment act or practice that violates the law is a protected activity by the express terms of La. R.S. 23:967. Defendant does not dispute that Plaintiff informed Capitelli and others of Pizza's comments around October 4, 2019, which is after she reported the comments (*i.e.*, violations of state law) to Eldridge in March 2019.[103] Again, Plaintiff has created a genuine dispute of material fact as to whether she engaged in disclosure activities after reporting violations of state law, but before her termination, which is the third element of her reprisal claim.

In sum, Plaintiff has carried her burden of demonstrating the existence of genuine disputes of material fact precluding the entry of summary judgment. Accordingly, Defendant is not entitled summary judgment on Plaintiff's reprisal claim under Louisiana law.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for partial summary judgment[104] is **DENIED.**

**New Orleans, Louisiana, this 19th day of October, 2022.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[101] *Id.* at p. 22.
[102] R. Doc. 93-1 at p. 22.
[103] *Id.* at p. 17.
[104] R. Doc. 93.